HARRILL BROTHERS v. SOUTHERN RAILWAY COMPANY.

(Filed 14 May, 1907).

1. Railroads—Penal Statutes—Construction—Refusal to Deliver Freight—Excuse—Interstate Commerce.—While penal statutes are to be strictly construed, their construction must not defeat the legislative intent. Revisal, sec. 2633, regarding the delivery of freight to the consignee, was intended for his benefit and protection and to recognize and enforce the observance of rates as fixed under the Federal laws, when applicable. It is no defense to an action to recover a penalty, under Revisal, sec. 2633, for refusing to deliver an interstate shipment upon tender of freight charges by the consignee, for the defendant company to show its agent did not know the correct amount of the charges because of the defendant's failure to file its schedule of rates, under the requirement of the interstate commerce act, or that the bill of lading showing such charges had not been received with the goods at their destination, in the usual course of its business.

2. Same—Delivery of Freight—Common-law Duty—Statutory Requirement—Constitutional Law.—A railroad company owes it as a common-law duty to deliver freight upon tender of lawful charges by the consignee and, in the absence of a conflicting regulation by Congress, Revisal, sec. 2633, imposing a penalty upon default of the railroad company therein, is constitutional and valid, and is an aid to, rather than a burden upon, interstate commerce.

3. **Same—Penalties Not Cumulative.**—Revisal, sec. 2633, imposes only one penalty for the refusal of the railroad company to deliver freight upon demand and tender of charges, and it is not cumulative upon more than one demand for the same offense.

CIVIL ACTION, heard by *Justice, J.,* at chambers in Rutherfordton, on 10 November, 1906.

This action was brought to recover penalties under Revisal, sec. 2633, for failure to deliver goods shipped over the defendant's line of railway from without the State to Rutherfordton, in this State, after tender of the freight charges, and was heard upon a case agreed, which is as follows:

1. The defendant is a corporation, and operates a line of its railroad through Rutherford County, and has a depot at Rutherfordton, in said county, and the plaintiffs are merchants in said town of Rutherfordton.

2. The plaintiffs, on 15 August, 1905, offered to pay the freight charges and take said goods from the depot of defendant, and offered to pay the freight charges, whatever they were, to the agent of defendant at Rutherfordton on each and every day thereafter to and including 20 September, 1905. The defendant, through its agent, refused to accept or receive any money and to deliver the said freight to plaintiffs, assigning as his reason therefor that he had no way-bill and did not know what the freight charges were, the freight having been transferred to defendant at Harriman's Junction, outside the State of North Carolina.

3. The plaintiffs informed the defendant's agent that the goods were shipped from Cincinnati by Wyler, Ackerland & Co. on 14 August, 1905. The boxes containing the goods were marked "Harrill Brothers, Rutherfordton, North Carolina," and remained in the depot till they were levied upon and removed under claim and delivery proceedings (taken out by the plaintiffs) in this case on 21 September, 1905.

4. It is agreed between counsel for both plaintiffs and defendant that the above-entitled action may be heard on the foregoing facts, out of term, by the Judge, and that such judgment may be rendered as in law is proper.

The Court, upon the case agreed, adjudged that the plaintiffs recover of the defendant a penalty of fifty dollars per day for thirty days, and the costs. To this judgment the defendant excepted and appealed.

*McBrayer, McBrayer & McRorie* for plaintiffs.
*Wm. B. Rodman, George F. Bason,* and *F. H. Busbee & Son* for defendant.

Walker, J., after stating the case: The goods, it appears in this case, were shipped from Cincinnati, Ohio, to Rutherfordton, in this State, over connecting lines of railway, the defendant's line being one of them, and having arrived at the latter place and being then in the warehouse of the defendant at Rutherfordton, the plaintiffs, who were the consignees, offered to pay the freight charges, whatever they were, and demanded a delivery of the goods, which was refused by the defendant's agent for the reason that he did not know what the freight charges were, the goods having been delivered to the defendant at Harriman's Junction, outside of this State. This would seem to make out the plaintiffs' case under the statute and entitle him to the penalty. Revisal, sec. 2633. The defendant, though, resists his recovery upon the following grounds:

"1. That the statute only applies to those shipments where rates have been established by the line or lines, for certain points, and those rates have been filed with the Interstate Commerce Commission, in the case of interstate shipments, or with the State Commission, in the case of intrastate shipments.

"2. That the statute is in conflict with the Fourteenth Amendment to the Constitution of the United States.

"3. That the statute, in so far as it applies to interstate shipments, is in conflict with the Constitution of the United States, Art. I, sec. 8, clause 3 (commerce clause).

"4. That only one penalty of fifty dollars can be collected on any one shipment, and that the penalty is not cumulative."

We do not think that any one of the first three grounds is tenable or sufficient to defeat a recovery by the plaintiff, though we are of opinion that the third ground is well taken.

The first objection made by the defendant's counsel is based upon a misconception of the true meaning of the statute under which the action is brought. It does not provide that the penalty for a refusal to deliver freight shall be recoverable only where rates have been made and filed with the Interstate Commerce Commission, so that the making and filing of the rate becomes a condition precedent to the imposition of the penalty for a refusal to deliver, but the meaning of the section is that, upon a tender of the stipulated charges, as stated in the bill of lading, which shall not exceed the amount fixed in the classification and table of rates published and filed with the Commission, and upon refusal to deliver the freight, the penalty shall accrue. If there has been no classification made or rates fixed, published and filed with the Commission, Interstate or State, or other compliance with the law, then the rate stated in the bill of lading (if not in itself unreasonable or excessive) applies, subject to any liability of the carrier for having failed to comply with the law, but if such a classification has been made or rates fixed and filed, as provided by law, then the charges must not exceed what the carrier is entitled to receive thereunder. The legislation embodied in section 2633 was intended to recognize and enforce the observance of the

rates as fixed under the requirement of the Federal law where it is applicable. The provision was made for the protection of the consignee, so that the carrier cannot exact from him, as a condition of the delivery of freight, the payment of excessive freight charges. We see no possible objection to the statute, as thus construed, upon the ground of any conflict with Federal laws. If the defendant did not know what the charges were, as fixed by the bill of lading, because it did not have the way-bill, it should have known, and it was not the fault of the plaintiffs that the way-bill did not accompany the goods and was not received with them or in the usual course of business. The point is made that the statute requires the carrier to inform the consignee of the classification and rates as filed with the Commission, and if none have been filed it would be impossible to comply with this provision. Again we say that this was required for the benefit of the consignees, and they are not complaining of an overcharge or excessive demand on the part of the defendant, but expressed a willingness to pay whatever was due. But whose fault would it be, if no schedule is filed? The carrier's, of course. Shall he be permitted to plead his own wrong in excuse for the failure to give the information? Statutes imposing penalties, it is true, should be construed strictly, but this does not mean that they shall be so construed as to defeat the intention of the Legislature. They should receive a reasonable interpretation, so as to effectuate that intention. Any other construction than the one we have given to section 2633 would be contrary to what was plainly intended. The law does not, of course, require the defendant to give information which it does not possess and could not obtain, but that did not excuse it for violating the statute in refusing to deliver the freight when the plaintiff tendered whatever amount was due to it for transporting the goods. The de-

fendant should have known whether or not it had complied with the law by filing the classification and table of rates with the Commission.

The second and third grounds of defense may be considered together. We are unable to see how section 2633 of the Revisal is an interference with interstate commerce. Defendant assigns three reasons why it is, and they are these: "It undertakes to regulate: (1) How common carriers shall settle their freight charges on interstate commerce; (2) how common carriers shall tell the consignee what these charges are, and (3) to provide upon what terms the common carrier shall make delivery of interstate freight." There can be no doubt that the shipment in this case was interstate traffic and within the protection of the commerce clause of the Federal Constitution. But can it be that a statutory requirement that carriers shall deliver freight to consignees upon tender or payment of the freight charges due thereon, as fixed by the contract of the parties which is evidenced by the bill of lading, and not exceeding the rate filed with the Commission, is an interference with interstate commerce? It is no obstruction to commerce nor does it impose any burden upon it, and in no sense is it a regulation of it. It has been settled that an enactment which may incidentally affect commerce does not necessarily constitute a regulation of it within the meaning of the Federal Constitution. *Sherlock v. Alling,* 93 U. S., 99; *Mobile Co. v. Kimball,* 102 U. S., 691; *Railroad v. Kentucky,* 183 U. S., 503. It is equally well settled that legislation which is a mere aid to commerce may be enacted by a State, although at the same time it may incidentally affect commerce itself. *Mobile Co. v. Kimball, supra; Smith v. Alabama,* 124 U. S., 465. The Code, sec. 1967, provided that goods received by a carrier for transportation should be shipped within five days from their

receipt, and the statute was held by this Court to be valid, although it applied to interstate traffic, as it enforced the performance of his duty by the carrier and was, therefore, not a regulation of commerce, but an aid to and intended to facilitate it. *Bagg v. Railroad,* 109 N. C., 279. The questions here involved are learnedly and exhaustively discussed in that case by *Justice Avery,* with a full citation and consideration of the authorities bearing upon it. Since that decision was rendered, the question of the right of a State Legislature to impose a penalty by statute for the failure of a telegraph company to deliver an interstate message has been before the Supreme Court of the United States, and it was held to be a valid enactment and not any interference with interstate commerce. The Court, in the case referred to, says: "The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. The direction that the delivery of the message shall be made with impartiality and in good faith and with due diligence is not an addition to the duty which it would owe in the absence of such a statute. Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general law of the land is a regulation of or an obstruction to interstate commerce within the meaning of that clause of the Federal Constitution under discussion? We think not. No tax is laid upon any interstate message, nor is there any regulation of a nature calculated to at all embarrass, obstruct, or impede the company in the full and fair performance of its duty as an interstate sender of messages. We see no reason to fear any weakening of the protection of the constitutional provision as to commerce

among the several States by holding that, in regard to such a message as the one in question, although it comes from a place without the State, it is yet under the jurisdiction of the State where it is to be delivered (after its arrival therein at the place of delivery), at least so far as legislation of the State tends to enforce the performance of duty owed by the company under the general law." *Telegraph Co. v. James,* 162 U. S., 650.

It has been said that the cases in which the State may exercise power over the general subject of commerce may be classified thus: First, those in which the power of the State is exclusive; second, those in which the State may act in the absence of legislation of Congress; and third, those in which the action of Congress is exclusive and the State cannot interfere at all. *Bridge Co. v. Kentucky,* 154 U. S., 204. Where the subjects in regard to which the laws are enacted, instead of being local in their nature (as are those of the second class in the above enumeration) and affecting interstate commerce, but incidentally, are national in their character, then the non-action of Congress indicates its will that such commerce shall be free and untrammeled; but if, on the contrary, the enactment falls within the second class and affects commerce only locally and not beyond the borders of the State, in such a case the State may legislate, and the mere existence of the power in Congress to act will not oust its jurisdiction, so to speak, but only the exercise of the power of Congress incompatibly with the exercise of the same power by the State. Where the State legislation merely operates as an aid to interstate commerce, it is not amenable to the objection that it is a regulation of or an interference with it. *Telegraph Co. v. James, supra.* There has been no legislation by Congress upon this subject which supercedes the right of the State to pass the statute under consideration. It

cannot be successfully argued that such effect should be given to section six of the Interstate Commerce Act, requiring common carriers to print and keep open for public inspection their schedules, showing rates and fares for the transportation of property and passengers, the classification of freight, and the terminal charges, and declaring it unlawful to charge or receive a greater or less sum for transportation of property or passengers than is therein specified. This is the only legislation of Congress relied on by the defendant as in conflict with section 2633 of the Revisal and as displacing the power of the State to legislate upon the subject. It must be presumed, against the contention of the defendant, that it has complied with the law by filing its schedule of rates, fares, and charges with the Commission and by publishing the same, and that the charges as contained in its bill of lading conform thereto. Our statute does not permit the carrier to charge more or less than the rates thus fixed by its schedules and the act of Congress, but rather requires the carrier to observe the said rates by expressly providing that the amount stated in the bill of lading shall be the same as that to be found in the schedule of classification and rates. We could not decide that the duty imposed by our statute to inform the consignee as to the amount of the charges and of delivering the freight upon tender or payment of the amount thus fixed in compliance with the law of Congress militates in the slightest degree against the full exercise of the power by Congress to regulate commerce between the States. It seems to us to have the opposite effect. The cases cited by the learned counsel of the defendant in their brief do not apply, as they refer to cases falling within the third class of the enumeration in respect to the power that may be exercised by Congress and by the State legislatures, respectively, over commerce. The legislation considered in

those cases affected interstate commerce directly, and was held to be national instead of local in character. When the proper distinctions are kept in mind, the irrelevancy of the authorities cited is obvious. *Telegraph Co. v. James, supra;* Judson on Interstate Commerce, secs. 24 and 25; *Currie v. Railroad,* 135 N. C., 535. The question we have here for decision has been presented in identically the same form to other courts, and their statutes, which are worded substantially like ours, have received from them the construction which we now give to section 2633 of the Revisal. *Railway v. Nelson,* 4 Texas Civ. App., .345; *Dillingham v. Fischl,* 1 Texas Civ. App., 546; *Railway v. Hanniford,* 49 Ark., 291; *Railway v. Dyer,* 75 Texas, 572.

We cannot so construe the law as to permit the defendant, as a public carrier, to withhold freight merely upon the ground that it has not complied with the law of Congress, and, therefore, cannot know what the proper rate is, nor because it did not have the way-bill or other document furnishing the required information as to the classification and rate, for it was its plain duty to be provided with full knowledge as to all these matters. Any other view of the law would leave the carrier free to successfully plead his own default in defense to an action for a violation of the statute and a recovery of the penalty for the second wrong committed.

We hold that the defendant is liable for the penalty upon the facts agreed, but for only one. The law does not by its terms or by implication make the penalty cumulative upon each succeeding day of default or upon each succeeding demand and refusal, but gives only one penalty of fifty dollars for the refusal, though the consignee still has his action for damages at common law. Any other construction would subject the carrier to a penalty for each refusal upon any number of demands made in the same day or in each day for

any number of days. Such an interpretation is wholly inadmissible, even if such a provision clearly expressed would be valid. Section 2631, providing a penalty for the failure to receive freight, expressly declares that it shall accrue on each day of the refusal, and section 2632, as to the failure to transport, has a similar provision in regard to the penalty. The difference in phraseology of these sections and section 2633 clearly indicates that the Legislature intended there should be· but one penalty under the last-named section.

In view of what we have said, we need not discuss the remaining question, as to the constitutionality of section 2633 under the Fourteenth Amendment, as the defendant is plainly not within the protection of that provision of the Constitution upon the facts of this case, nor need we refer to the suggestion that the plaintiff did not tender his bill of lading when he made his demand, as no such point is in the case. That was not the ground of the refusal to deliver.

The judgment of the Court holding the defendant liable for the penalty is affirmed, ·but it will be modified so as to confine the recovery to one penalty of fifty dollars and the costs.

Modified and Affirmed.