REID & BEAM v. SOUTHERN RAILWAY COMPANY.

(Filed 25 May, 1909.)

1. **Railroads—Penalty. Statutes—Carriers of Goods—Refusal to Accept Freight—Constitutional Law.**

    Section 2631 of the Revisal of 1905, imposing a penalty on a railroad for refusing to accept freight tendered for shipment, is a valid regulation in direct and reasonable enforcement of the duties incumbent on defendant company as a common carrier, and is not in conflict with the Fourteenth Amendment of the Constitution of the United States.

2. **Same—Interstate Commerce.**

    Nor is said section repugnant to or in contravention of Article I, section 8, of the Constitution of the United States, conferring upon

150—48

Congress the power to regulate commerce between the States. The penalty is in direct enforcement of the duties incumbent on defendant company as common carrier, is imposed for a local default, is not a burden on interstate commerce, but in aid thereof, and, in the absence of inhibitive congressional legislation or of interfering action by the Interstate Commerce Commission, the matter is a rightful subject of State legislation.

3. **Railroads—Carriers of Goods—Schedules—Congress—Statutory Requirements—Presumptions—Interstate Commerce.**

The law presumes that a railroad company has complied with the requirements of an act of Congress, and the orders of the Interstate Commerce Commission made thereunder, in publishing its rates to and from stations on its road.

4. **Railroads — Schedules — Publication — Congress — Statutory Requirements—Purpose—Penalty Statutes.**

The purpose for which railroad companies are required to publish their schedule of rates by the act of Congress and the orders of the Interstate Commerce Commission, made in pursuance thereof, is entirely different from and inapplicable to that involved in an action for the penalty accruing from the refusal of the company to accept freight when tendered, under the Revisal, sec. 2631.

5. **Railroads—Penalty Statutes—Carriers of Goods—Refusal to Accept Freight—Due Process—Constitutional Law.**

The defendant having been afforded full opportunity to make defense, and the evidence failing to disclose any substantial excuse or explanation for its default, on the facts appearing in this case, a recovery of the penalty imposed by the statute is not an interference with or a burden on interstate commerce, prohibited by the United States Constitution or statutes or by regulations of the Interstate Commerce Commission, made in pursuance thereof.

ACTION under section 2361, Revisal, 1905, for wrongful failure to receive freight for shipment, tried before *Justice, J.,* and a jury, at January (Special) Term, 1909, of RUTHERFORD.

There was evidence, on the part of plaintiffs, tending to show that, on or about 25 June, 1906, the plaintiff firm, having received an order for a car load of shingles from one James Haddox, at Scottsville, Tenn., applied to P. B. Gunnels, who was then agent of defendant company at Rutherfordton, N. C., for a car; the same was furnished and loaded with the shingles by plaintiffs, on 2 July, shipping instructions given, prepayment of freight tendered and bill of lading demanded; that the agent

of defendant refused to give bill of lading, or ship the goods, assigning for reason that he did not know where Scottsville, Tenn., was, nor the rate thereto. Plaintiffs demanded that the goods be shipped, and told the agent they would prepay any additional amount found to be due, and requested that when the agent got ready to ship to 'phone to plaintiffs and they would come over and pay the freight due; that defendant's agent failed and refused to ship the shingles, till 17 July, when one Castle came to take over the agency, and being told, on inquiry of plaintiffs about the car load of shingles, and what the trouble was, he asked for shipping instructions, which were given, to James Haddox, Scottsville, Tenn., and, on 19 July, the freight was paid, the bill of lading given, and shingles shipped as directed, arriving at their destination without further let or hindrance.

Plaintiffs further testified that they had received no pecuniary injury by reason of the delay; that Gunnels still had charge of the depot when the shingles were shipped, and that he left about that time, and Castle took charge.

There was evidence, on the part of defendant, that Scottville, Tenn., was an industrial siding on the Knoxville and Augusta road, eight or ten miles out of Knoxville, Tenn., established for the convenience of persons shipping brick from that point; that there was no depot or regular agent there, but goods were re-billed to that point at Rockford, a regular station on the same road, some two miles distant.

One W. P. Hood, testifying for defendant, stated that he was superintendent of the Knoxville and Augusta road, and that this road was operated as an independent line; that there was no such place on that road as Scottsville, but an industrial siding called Scottville, at the point indicated, a flag station, eight or ten miles out from Knoxville, and that bills of lading for goods to and from that point were made out at Rockford, a regular station, some two miles distant. On cross-examination the witness stated that his remittances from the operation of the road were made to the treasurer of the defendant company; that his reports were made to the auditor of such company, and that, since the consolidation of the East Tennessee and Virginia Rail-

road with the old Richmond and Danville, the defendant company had paid all the employees of the Knoxville and Augusta road their salaries.

The court below charged the jury, in part, as follows:

"The burden is on the plaintiffs to show, by the greater weight of the evidence, that the defendant is indebted to plaintiffs. This suit is brought to recover penalty for refusal on the part of the defendant, Southern Railway Company, to receive a car load of shingles for shipment to James Haddox, Scottville, Tenn. In order to entitle plaintiffs to recover it is necessary for the jury to find from the evidence, by the greater weight thereof, first that the defendant is a common carrier; that is admitted; second, that the plaintiffs tendered the car load of shingles for shipment, and, third, that defendant refused to receive the same for shipment. If the jury finds from the evidence, by the greater weight thereof, first, that the plaintiffs, Reid & Beam, tendered the car load of shingles to Gunnels, the defendant's agent at Rutherfordton, and furnished him with shipping directions and offered to prepay the freight, and demanded a bill of lading, and that the plaintiffs demanded that the car be shipped, then the plaintiffs would be entitled to recover, unless you find from the evidence that the defendant failed and refused to ship by reason of facts intervening which defendant, by the exercise of reasonable care, could not have prevented or overcome. The defendant contends that the agent did not know where Scottsville was, and did not know the freight rate, and that therefore defendant is excused. If you find from the evidence, by the greater weight thereof, that Scottsville or Scottville was a flag station on a branch road under control of defendant company, then it was the business of the agent of defendant company to know where it was and to know the freight rate to that point; or if you so find that the plaintiffs told the agent that Scottsville was on a branch road running out from Knoxville, and on the Knoxville and Augusta Railroad and some seven or eight miles from Knoxville, and that statement was true, and further so find that, by the exercise of reasonable care and diligence on the part of the agent, he could have ascertained where the place was, and the rates, it was his duty to do so, and failure on his part

to exercise such reasonable care would not excuse the defendant company. If you find from the evidence, by the greater weight thereof, that defendant refused, on 2 July, to receive the car, simply on the ground that the agent did not know and could not, by the exercise of reasonable care, have ascertained the locality and rates, and you further find from the evidence, by the greater weight thereof, that the failure to ship up to the 19th was on the same ground and no other, then the plaintiffs would be entitled to recover $50 a day, as a penalty for such failure, for 14 days; this would exclude the day of shipment and also exclude the Sundays included between the dates, which would be $700."

The jury rendered a verdict as follows:

"Is the defendant indebted to the plaintiffs for the unlawful failure to receive a car load of shingles to be transported to Scottsville, Tenn., as alleged? If so, in what sum? Answer: "Three hundred and fifty dollars."

There was judgment on the verdict for plaintiffs, and defendant excepted and appealed, and, having made eighteen exceptions, duly noted in the record, under different forms of statement, assigns for error—

"1. That the statute in question, Revisal, 1905, sec. 2631, is unreasonable and oppressive and in conflict with the Fourteenth Amendment to the Federal Constitution.

"2. That, as applied to interstate commerce, the same is in conflict with Article 1, sec. 8, clause 3, of said Constitution, (*a*) as an unlawful attempt to regulate commerce; (*b*) and, on the facts presented here, as amounting to distinct burden upon it."

*W. B. Rodman* and *Joseph M. Carson* for defendant.
No counsel *contra.*

HOKE, J., after stating the case: The validity of these penalty statutes has been before the Court for consideration in many recent cases, and, in *Efland v. Railroad,* 146 N. C., 138, this being a decision on a statute of kindred nature, the Court, in speaking to the power of a government to enact regulations of this character, said: "The right of the State to establish regu-

lations for these public-service corporations, and over business enterprises in which the owners, corporate or individual, have devoted their property to a public use, and to enforce these regulations by appropriate penalties, is now and has long been too firmly established to require or permit discussion." Citing *Harrill's case,* 144 N. C., 532; *Stone's case,* 144 N. C., 220; *Walker's case,* 137 N. C., 168; *McGowan's case,* 95 N. C., 417; *Branch's case,* 77 N. C., 347; *Railroad v. Florida,* 203 U. S., 261; *Railroad v. Helms,* 115 U. S., 513; *Mobile v. Kimball,* 102 U. S., 691; *Munn v. Illinois,* 94 U. S., 112.

The opinion then quotes from that of *Associate Justice Field,* in *Helm's case,* 115 U. S., 513, both on the right to enact such statutes and the necessity for their proper enforcement, as follows: "The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase, in many cases, double, and in some cases treble, and even quadruple the actual damages." And proceeds further: "And the right to establish such regulations for certain classes of pursuits and occupations, imposing these requirements equally on all members of a given class, has been made to rest largely in the discretion of the Legislature." *Tullis v. Railroad,* 175 U. S., 348; *Insurance Co. v. Daggs,* 172 U. S., 562; *McGowan v. Bank,* 170 U. S., 286.

And the very statute in question here (Revisal, 1905, sec. 2631) has been approved and upheld in several of these cases as a just and reasonable exercise of the power indicated, and both as to inter and intrastate commerce. *Garrison v. Railroad, ante,* 575; *Twitty v. Railroad,* 141 N. C., 355; *Currie v. Railroad,* 135 N. C., 536; *Baggs v. Railroad,* 109 N. C., 279.

In *Twitty's case, supra,* we have held that a refusal to receive

goods for "transportation" and to issue a bill of lading therefor
amounts to a violation of this section, though the goods were
received for storage.

In Garrison's case, supra, it was held that the placing of
goods for shipment in the car of the company, permitted by the
agent, with a demand for shipment, and accompanied by a con-
tinuous offer of prepayment of freight, were facts from which
a tender day by day should be inferred until the shipment was
made.

The case of Cotton Mills v. Railroad, ante, 608, in no way
conflicts with this position. That case only holds that where
goods were on a platform, under circumstances leaving it doubt-
ful whether they had been taken charge of by the company, with
other facts which left the matter of a tender day by day in
doubt, the question was properly referred to a jury to decide as
to whether such tender had been made. And the opinion of the
Court, on a former appeal in this cause (149 N. C., 423) is a
direct decision on the validity of the statute to be enforced by
orderly and proper procedure; the Court holding, on facts sub-
stantially similar to those presented here, as follows:

"1. A refusal by the carrier's agent to receive, at its depot,
freight and transportation charges therefor, destined for a point
on the carrier's road which was only a siding, and was not a
regular station, is wrongful, and subjects the carrier to the
penalty prescribed by Revisal, sec. 2631, when the refusal is on
the ground that the agent did not know where the given desti-
nation was, and it appears that he could have ascertained that
freight was ordinarily shipped there on waybills made out to a
regular station on the carrier's road some two miles distant
therefrom.

"2. When a shipment of freight and transportation charges
are refused by carrier's agent, because he did not know where
its given destination was, and it appears that the name given was
very slightly changed from that appearing on the 'Official Rail-
way Guide and Shipping Guide' used by the carrier, the fact
that another agent, who afterwards took the place of the first,
promptly learned the location of the destination and the rate,
and gave bill of lading and made shipment, is evidence that the

rate and destination could have been ascertained by the first from the information given him, in an action for the penalty prescribed by Revisal, sec. 2631.

"3. The, penalty arising under Revisal, sec. 2631, from the wrongful refusal of carrier's agent to accept an interstate shipment of freight, bears no relation to the commerce clause of the Federal Constitution, for the penalty accrues before the freight is accepted for transportation.

"4. The shipper of the goods is the 'party aggrieved,' and is the one entitled to sue for the penalty prescribed in Revisal, sec. .2631, which arises from the wrongful refusal of the carrier's agent to accept them for transportation."

It was chiefly urged for error, on the part of the defendant company, that the statute in question was invalid because an unlawful interference .with interstate commerce, and we were referred by counsel to several decisions of the Supreme Court of the United States as tending to support their position; notably the case of *McNeil v. Railroad,* 202 U. S., 543; *Railroad v. Mayes,* 201 U. S., 321; *Railroad v. Murphy,* 196 U. S., 194.

It may be, as indicated in the former opinion in this cause, ·that the commerce clause of the Federal Constitution is not involved in the case, on the ground therein stated, that the · penalty accrues before the "freight is accepted for transportation," and on the principle applied in the case of *Coe v. Errol,* 116 U. S., 517; but conceding that the goods, when tendered for transportation to another State, as to matters involved in such transportation and in reference to these penalty statutes, should be considered and dealt with as interstate commerce, we are of opinion that the position of the counsel cannot be sustained, and that they do not correctly interpret the cases cited and relied on by them.

In the case of *Morris-Scarboro-Moffitt Co. v..Express Co.,* 146 N. C., 167, the plaintiffs sued for penalty imposed by section 2634 of the Revisal, for unlawful failure on part of defendant company to adjust and pay a valid claim for loss or damages to goods shipped from another State, and it was held—

"2. Revisal, sec. 2634, is not repugnant to or in contravention

of Article I, section 8, of the Constitution of the United States, conferring upon Congress the power to regulate commerce between the States. The penalty is in direct enforcement of the duties incumbent on the carriers by law to adjust and pay for damages due to their negligence; is imposed for a local default arising after the transportation has terminated; is not a burden on interstate commerce, but in aid thereof, and, in the absence of inhibitive congressional legislation, the matter is the rightful subject of State legislation."

And in the opinion, page 171, the Court said: "The decisions of the Supreme Court of the United States have uniformly held that under this clause of the Constitution commerce between the States shall be free and untrammeled by any regulations which place a burden upon it; and these decisions also hold that, in the absence of inhibitive congressional legislation, a State may enact and establish laws and regulations on matters local in their nature which tend to enforce the proper performance of duties arising within the State, and which do not impede, but aid and facilitate, intercourse and traffic, though such action may incidentally affect interstate commerce. Calvert on Regulation of Commerce, pp. 76, 152, 159." Citing in support of this position *Mobile v. Kimball,* 102 U. S., 691; *Smith v. Alabama,* 124 U. S., 465, 476; *Telegraph Co. v. James,* 163 U. S., 650; *Railroad v. Solan,* 169 U. S., 133-137, and other authorities, and quoting from the opinion of *Mr. Justice Matthews,* in *Smith v. Alabama, supra,* as follows:

"It is among these laws of the States, therefore, that we find provisions concerning the rights and duties of the common carriers of persons and merchandise, whether by land or by water, and the means authorized by which injuries resulting from the failure properly to perform their obligations may be either prevented or redressed. A carrier, exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable according to the laws of the State for acts of nonfeasance or misfeasance committed within its limits. If he fail to deliver goods to the proper consignee, at the right time or place, he is liable, in an action for damages, under the laws of the State in its courts; or if by negligence in transpor-

tation he inflicts injury upon the person of a passenger brought from another State, a right of action for the consequent damage is given by the local law. In neither case would it be a defense that the law giving the right to redress was void as being an unconstitutional regulation of commerce by the State. This, indeed, was the very point decided in *Sherlock v. Alling,* above cited."

The Court then referred to the cases cited and relied upon by defendant, as follows:

"We were referred by counsel to cases of *Railroad v. Murphy,* 196 U. S., 195; *Railroad v. Mayes,* 201 U. S., 321; *McNeal v. Railroad,* 202 U. S., 543, but we do not think that these decisions are in conflict with the views we have held to be controlling in the case before us. As we understand them, they all proceed upon the idea, not that the regulations in question were void because they affected, in some way, interstate commerce, but because they interfered directly with intercourse and traffic between States and were of a character that imposed an undoubted and distinct burden upon them."

As showing that this is a correct deduction from these authorities, in *McNeill's case, supra,* Mr. Justice White, for the Court, said: "Without at all questioning the right of the State of North Carolina, in the exercise of its police authority, to confer upon an administrative agency power to make reasonable regulations concerning the place, manner and time of delivery of merchandise moving in the channels of interstate commerce, it is certain that any regulation of such subjects made by the State, or under its authority, which directly burdens interstate commerce, is a regulation of such commerce and repugnant to the Constitution of the United States."

In *Mayes' case, supra,* Associate Justice Brown, among other things, said: "While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting and ventilation of passenger cars, the furnishing of food and water to cattle and other live stock, we think an absolute requirement that a railroad shall furnish a certain

number of cars at a specified day, regardless of every other con-
sideration except strikes and other public calamities, transcends
the police power of the State and amounts to a burden upon
interstate commerce.   It makes no exception in cases of sudden
congestion of traffic, an actual inability to furnish cars by reason
of their temporary and unavoidable detention in other States or
in other places within the same State.   It makes no allowance
for interference of traffic occasioned by wrecks or other acci-
dents upon the same or other roads, involving a detention of
traffic, the breaking of bridges, accidental fires, washouts or
other unavoidable consequences of heavy weather."

And, in *Railroad v. Murphy, supra,* Mr. Justice Peckham,
delivering the opinion, said: "The effect of such a statute is
direct and immediate upon interstate commerce.   It directly
affects the liability of the carrier of freight destined to points
outside the State, with regard to the transportation of articles
of commerce; it prevents a valid contract of exemption from
taking effect, except upon a very onerous condition, and it is
not of that class of State legislation which has been held to be
rather an aid to than a burden upon such commerce.   The
statute in question prevents the carrier from availing itself of
a valid contract, unless such carrier comply with the provisions
of the statute by obtaining information which it has no means
of compelling another carrier to give, and yet, if the informa-
tion is not obtained, the carrier is to be held liable for the negli-
gence of another carrier, over whose conduct it has no control.
This is not a reasonable regulation in aid of interstate com-
merce, but a direct and immediate burden upon it."

In *Garrison v. Railroad, ante,* 575, the Court has held, *Asso-
ciate Justice Connor* delivering the opinion, that the statute in
question here is not an arbitrary requirement permitting no
defense, but that "When the carrier shows the existence of con-
ditions for which it is not responsible, preventing and rendering
impossible the discharge of the duty, it will not be liable for
the penalty," and quotes with approval from an opinion by
*Ashe, J.,* as follows: "When the facts show that by force of
circumstances for which it is in no way responsible the carrier

was disabled from performing the duty imposed by the statute, it would be unjust to punish it for failure to comply with its requirements."

To like effect is *Whitehead v. Railroad,* 87 N. C., 255; *Keeter v. Railroad,* 86 N. C., 346; *Branch's case,* 77 N. C., 347. The statute, therefore, does not come under the condemnation expressed in these decisions of the United States Supreme Court, but it is always open to defendant to offer satisfactory excuse and explanation for an apparent default, and this opportunity was given the defendant on the trial of the present case.

Since the decision of *Morris-Scarboro-Moffitt Co. v. Express Co.* was rendered, the Supreme Court of the United States, the final authority on these matters, has held, on a question relevant to this inquiry, that "Notwithstanding the creation of the Interstate Commerce Commission and the delegation to it by Congress of the control of certain matters, a State may, in the absence of express action by Congress or by such commission, regulate for the benefit of its citizens local matters indirectly affecting interstate commerce."

This principle was announced and sustained in *Railroad v. Flour Mills,* 211 U. S., 612, a case which involved the right of the court to compel a railroad or a common carrier to place cars on a siding which had been prepared for the purpose and for the benefit and convenience of a flouring mill, engaged in making shipments of interstate commerce. So far as we have been enabled to discover, there has been no act of Congress or regulation of the Interstate Commerce Commission which undertakes to deal directly with this question of the reception of freight for shipment, certainly none in reference to its safety and prompt dispatch; and, until this is done, we are of opinion that the matter comes within the principle of the numerous authorities referred to, and continues to be a subject for proper and reasonable State regulation.

It does not appear from the testimony that the defendant has not filed its schedule of rates with the Interstate Commerce Commission to Scottville, Tenn., for it can hardly be seriously contended that the difference between Scottville, Tenn., and *Scottsville,* Tenn., is of the substance. The presumption is that

the company has complied with the law.    And if it were other-
wise, we are of opinion that the act of Congress and the orders
of the commission made thereunder requiring the publication
of rates, was made for an entirely different purpose from that
involved in this inquiry, and does not constitute such interfering
action.    See *Harrell v. Railroad,* 144 N. C., pp. 540, 541.

Nor do we think that the statute imposes any burden upon
interstate commerce as applied to the facts of this particular
case.    While one of defendant's witnesses stated, in his examina-
tion-in-chief, that the Knoxville and Augusta road was operated
as an independent line, the witness evidently could have meant
only that a separate organization was maintained for purposes
of local management and control.    This is, no doubt, required
by its charter or the general statutes of the State of Tennessee,
but it is also conclusively established, from the statement of
the witness on his cross-examination, that the Knoxville and
Augusta road is operated by defendant company, all the money
being sent to its treasurer, the reports being made to its auditor,
and all salaries of all employees being paid by the defendant.
This being true, the agent of the defendant should have known
of the placing of this siding and the rate thereto, or should have
ascertained the same in the exercise of reasonable care, and this
was the only burden which was placed upon the defendant, and
any fact or circumstance which might have tended to indicate
hardship or oppression would seem to be effaced by the fact
admitted, that in two days after the coming of a new man, and
while the former agent was still in charge, the goods were re-
ceived and shipped, and reached their destination in due course
without further annoyance or delay.

Nor is there any merit in the suggestion that the plaintiffs
suffered no pecuniary injury by reason of the delay.    Speaking
to this question, in *Summers v. Railroad,* 138 N. C., 298, this
Court said: "These penalties are not given solely on the idea
of making pecuniary compensation to the person injured, but
usually for the more important purpose of enforcing the per-
formance of a duty required by public policy or positive statu-
tory enactment."

We are of opinion that, in the absence of inhibitive congres-

sional legislation, or of interfering action on the part of the Interstate. Commerce Commission, the statute in question is a valid regulation in direct and reasonable enforcement of the .duties incumbent on defendant as a common carrier; that on the trial the defendant was afforded full opportunity to make defenses, and the facts presented disclose no substantial excuse or explanation for its default; that no error appears in the record which gives the defendant any just ground of complaint, and the judgment against it is therefore affirmed.

No Error.

BROWN, J., dissenting: This is a civil action to recover a penalty, under section 2631 of the Revisal of 1905, for failure to receive a car load of shingles to be shipped from Rutherfordton, N. C., to Scottsville, Tenn. The following issue was submitted:

"Is the defendant indebted to the plaintiff for the unlawful failure to receive a car load of shingles to be transported to Scottsville, Tenn., as alleged? If so, in what sum?" Answer: "Three hundred and fifty dollars."

1. I am of opinion that, upon the entire evidence, there was but one tender and that in no event can a penalty for more than one day be recovered. When the agent of defendant refused to issue the bill of lading, and gave his reasons for it, then and there plaintiff told the agent that when he found what the freight rate was, to let him know, and he would prepay it, agent replying that when he got instructions how to ship, he would issue bill of lading and ship shingles. Plaintiff never had a further conversation with the defendant's agent from 2 July, 1906, to 17 July, 1906, when one Castle came to plaintiff's place of business to inquire about the car. Plaintiff further testified that he never lost a cent by the shipment being delayed.

On 17 July, Castle came to relieve defendant's agent, Gunnels, and went in to see Reid about the car of shingles. Reid showed him correspondence that he had received from James Haddock relative to the delay of the shipment of shingles, stating that Scottsville was on the Knoxville and Augusta Railroad. In the meantime the freight office at Columbia, S. C., was also

trying to locate Scottsville, and received a wire from defendant's agent at Knoxville that Scottsville was a siding on the Knoxville and Augusta Railroad a few miles out from Knoxville. The information was forwarded to Gunnels on 19 July, and the bill of lading was issued and the car was moved that day. The standard railroad guides and directories do not show a Scottsville or a Scottville anywhere in Tennessee.

These undisputed facts show that there was only one tender and that the plaintiff made no further tender, but acquiesced in the delay incident to locating Scottsville, the place of destination, admitted to be not on defendant's lines of railway.

This puts the case, in my opinion, squarely on "all fours" with the opinion of this Court in *Cotton Mills v. Railroad, ante,* 608.

2. I think this transaction from its inception related solely to interstate commerce and that the State statute cannot apply.

The car was ordered for the purpose of shipping shingles to a point in Tennessee. The act of furnishing cars for such shipments was held to be interstate commerce by the Supreme Court of the United States, in *Railroad v. Mayes,* 201 U. S., 321, because it was one of the steps necessary to the culmination of the transaction.

The car in this case had been duly furnished, and was loaded with the shingles or articles to be shipped. The next step to complete the transfer of the title and the exchange of commodities was for the shipper to give shipping instructions and receive from the railroad company a bill of lading. The shipper claims that he gave instructions to ship to James Haddock, at Scottsville Tenn., thus making it an interstate transaction. The statute in question, and under which this action is brought, undertakes to regulate the terms and conditions upon which the bill of lading shall be issued by the carrier. The bill of lading demanded was not to a point in this State, but to a point in Tennessee.

The contract which the defendant was required to enter into was a contract of carriage of freight from one State to another. Such contracts not only partake entirely of the character of interstate commerce, but they are actually regulated by the Inter-

state Commerce Commission under the authority of Federal law. Congress has legislated on the subject, and made regulations in reference to the publication of rates for interstate commerce and otherwise taken control, through the commission, of all matters relating to the shipment of freight from one State to another. Act of 29 June, 1906, sec. 6. This section of the Interstate Commerce Act provides: "No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs, than the rates, fares and charges which are specified in the tariff, filed and in effect at the time."

It is undisputed that the defendant company had never filed with the Interstate Commission and had never published a tariff to Scottsville or Scottville, Tenn., for the reason that its officials had never heard of any such place. This appears in the plaintiff's own testimony.

It turns out, upon investigation, that Scottsville is not and never has been a shipping point upon any railway, but that it is only a flag station and siding on the Knoxville and Augusta Railroad and that all freight destined to it is billed to Rockford, Tenn. Thus it appears that if defendant's agent had issued the bill of lading to Scottsville and fixed the freight rates thereto, and received the money, he would have violated the act of Congress which I have referred to and would have subjected the defendant to prosecution by the Federal Government. Surely the defendant cannot be penalized by a State for not issuing a bill of lading in violation of the act of Congress in a matter over which the latter has exclusive control.

3. It is admitted that the plaintiff, when he tendered the car, demanded a bill of lading to a point in Tennessee not on defendant's system. The evidence is undisputed that defendant's agent consulted standard railway guides and endeavored to locate

Scottsville, and was delayed in finding it, for the reason that all freight destined to Scottsville was waybilled or consigned to Rockford; all freight originating at Scottsville was waybilled or consigned from Rockford. There is a siding at Scottsville, put there for the accommodation of a brick plant, and up to the time of this shipment the Knoxville and Augusta Railroad, upon whose line Scottsville is situated, had never received any shipments for that siding.

Upon these facts it is contended that defendant's agent was required to receive the car *eo instanti,* issue bill of lading to Scottsville (the first and only shipment from any point), enter into a contract for the carriage of the shingles to this point, and state the freight rate, when none had been established. The mere statement of the contention, I think, demonstrates its unreasonableness.

A common carrier may contract to deliver freight to a point beyond its own lines, but it cannot be compelled to do so. Hutchinson on Carriers, sec. 145, and cases cited in notes. The liability of the carrier beyond the terminus of its own line must be based on contract, and no authority has been shown, and none exists, so far as my researches have discovered, to the effect that a State can compel an interstate carrier to enter into such a contract and give a through bill of lading to points in another State beyond its own lines and penalize the carrier for its refusal.

The condition of the tender of the car was that the defendant should contract to deliver it to a point in another State beyond its own line. It necessarily follows that if defendant cannot be compelled by the State to enter into such a contract against its will, it cannot be penalized for refusing to receive the car. A defense that may be interposed against the shipper for damages may be interposed in a suit for the penalty. *Garrison v. Railroad, ante,* 575; *Hardware Co. v. Railroad, ante,* 703; *Railroad v. Mayes, supra; McNeill v. Railroad,* 202 U. S., 543.

For the reasons given I think the defendant's motion to non-suit should have been allowed.

WALKER, J., concurs in dissenting opinion.