## BURLINGTON LUMBER COMPANY v. SOUTHERN RAILWAY COMPANY.

(Filed 2 March, 1910.)

**1. Instructions—Substantially Given.**

   It is sufficient when the charge of the court substantially gives the instructions requested.

**2. Carriers of Goods—Penalty Statutes—Published Rates—Absence of Knowledge—Excuse.**

   It is the duty of the common carrier to establish, file and publish rates on interstate shipments, and its failure to do so will not relieve it from a liability for the penalty incurred in refusing to accept freight for shipment. In this case there was no evidence that the carrier did not have these rates, nor that the agent could not have procured the information as to the desired rate of carriage by proper effort.

**3. Same—Presumption of Publication.**

   In the absence of evidence to the contrary, the Court will presume that a common carrier has established, filed and published its joint rates on interstate shipments, as required by law.

**4. Carriers of Freight—Penalty Statutes—Refusal to Receive—Interstate Commerce—Constitutional Law.**

   It is established by the former decisions of this Court that Revisal, 2631, imposing a penalty on the refusal to accept interstate shipments, does not contravene the commerce clause of the Federal Constitution, both because the act is prior to the beginning of transportation and because there is no provision of the act of Congress attempting to regulate it; and further, the State act is in aid of, not an interference with, interstate commerce.

**5. Instructions—Unsupported.**

   Prayers for special instruction, unsupported by evidence, are properly refused.

**6. Carriers of Freight—Penalty Statutes—Consignor and Consignee—Goods on Approval and Return—Party Aggrieved.**

   A consignee to whom goods are shipped on approval owes it as a duty to the consignor to return them if they are unsatisfactory, and he must do so to relieve himself of liability to the consignor; and he is the party aggrieved, under Revisal, sec. 2631, and may maintain his action thereunder for the penalty prescribed upon the refusal of the carrier to accept them for shipment.

7. Carriers of Freight—Penalty Statutes—Refusal·to Receive—Continuous Tender.

Placing a shipment of goods in the depot of the carrier, prepared for and with request for shipment, and thus leaving them there, makes each day's delay by the carrier "a refusal to ship," under Revisal, sec. 2631, and the carrier, thus refusing, is responsible for the penalty.

BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL from *Long, J.,* at May Term, 1909, of ALAMANCE.

The plaintiff sought to recover the penalty prescribed by Revisal, 2631, for the refusal of the defendant to receive for shipment to Saginaw, Michigan, certain milling machinery tendered it by the plaintiff on 28 January, 1907, no bill of lading for said machinery being issued until 3 April, 1907. The plaintiff's contention was that the defendant failed and refused to receive said machinery for shipment upon tenders made daily and continuously for a period of sixty-five days, and that by reason of said refusal said defendant became indebted to the plaintiff in the sum of $3,050, all of this amount in excess of $2,000 being remitted by the plaintiff. The defendant denied that there was any tender of machinery for shipment until 3 April, 1907, the day on which bill of lading was issued. It alleged that Revisal, 2631, was unconstitutional, in so far as it affected interstate shipments. It also alleged that the plaintiff had no such interest in the said machinery as entitled it to bring this action. There was a verdict for the plaintiff and a judgment in accordance therewith, from which defendant appealed.

*W. H. Carroll* for plaintiff.
*W. B. Rodman* and *Parker & Parker* for defendant.

CLARK, C. J. The exceptions 1, 2 and 12 are for failure to give certain prayers for instruction. On examination we find they were given substantially in the charge, which is sufficient. *Harris v. R. R.,* 132 N. C., 163; *R. R. v. Horst,* 93 U. S., 201.

Exceptions 4, 5, 6 and 7 are for refusal to give defendant's prayers for instruction 3, 4, 6 and 7, which are, in substance, that this being an interstate shipment, the defendant was required to establish, file and publish its rate between Burlington, N. C., and Saginaw, Mich., before shipping this freight, and that the burden was on the plaintiff to show that the rate had been so filed. The duty to file such rate was on the defendant, the fact was in its peculiar knowledge, and its failure to show that it had discharged such duty cannot absolve it

from its duty to the plaintiff to accept and ship his freight. It cannot plead its own default as a defense to another default. Indeed, on 3 April, the agent at Burlington did get such rate from division headquarters at Greensboro, twenty-one miles away. There is no evidence that such rate could not have been procured at any time prior thereto.

. The court committed no error in refusing these prayers for instruction. The proper establishing, publication and filing rates will be conclusively presumed. In *Reid v. R. R.,* 150 N. C., 764, the Court, in passing upon the same contention, said: "The presumption is that the company has complied with the law, and if it were otherwise we are of the opinion that the act of Congress and the orders of the commission made thereunder, requiring the publication of rates, was made for an entirely different purpose from that involved in this inquiry, and does not constitute such interfering action." To same purport *R. R. v. Oil Mills,* 204 U. S., 449.

In *Harrill v. R. R.,* 144 N. C., 540, the Court says: "It must be presumed against the contention of the defendant that it has complied with the law by filing its schedule of rates, fares and charges with the commission, and by publishing the same."

The Federal statute does not prohibit the receipt or forwarding of a single shipment, but forbids the carrier to "engage or participate in the transportation of passengers or property," interstate, without filing its rates. It is the *business* of a common carrier which the defendant is forbidden to exercise without filing its rates, and the statute has no sort of application to this case, where the defendant was carrying on such business and presumptively, at least, under authority of law.

Exceptions 6, 13, 14 and 16 call in question the constitutionality of Rev., 2631, as applied to interstate shipments. We have repeatedly passed upon this contention. The defendant's brief admits this, and cites eight decisions of this Court which it asks us to overrule. In one of the latest of these, *Reid v. R. R.,* 149 N. C., 423, the authorities were reviewed and the Court said: "The defendant contends, however, that Revisal, sec. 2631, giving a penalty for refusing to accept freight for shipment, is unconstitutional when the freight is to be shipped into another State. But refusing to receive for shipment is an act wholly done within this State; it is not a part of the act of transportation, and our penalty statute applies. This was held by *Avery, J.,* in *Bagg v. R. R.,* 109 N. C., 279, where the railroad company received the shipment for a point in another State, but negligently detained it for five days before shipping. The precise point herein was raised in *Currie v. R. R.,* 135 N. C., 536, and it was held that this section, giving a penalty

LUMBER COMPANY *v.* RAILROAD.

for failing and refusing to accept for shipment the car-load of lumber, was not unconstitutional as an interference with interstate commerce when the lumber was offered for shipment to. a point in another State. Both of these cases were cited and reaffirmed by *Walker, J.,* in *Walker v. R. R.,* 137 N. C., at page 168. In *Twitty v. R. R.,* 141 N. C., 355, *Brown, J.,* it was held that where the agent held the freight in storage, but refused to give a bill of lading because he did not know the freight rates, this was 'a refusal to receive for transportation, and the railroad company was liable for a penalty under Revisal, 2631.' In *Harrill v. R. R.,* 144 N. C., 532, *Walker, J.,* it was held that Revisal, sec. 2633, imposing a penalty for failure to deliver freight, was valid, though the freight was interstate." There the penalty was incurred after the transportation had ceased. Here the penalty occurred before the transportation had been begun and before the freight was even received and accepted for transportation.

When the case was again before the Court, *Reid v. R. R.,* 150 N. C., 764, *Justice Hoke,* after reviewing and approving the former decision, said: "Since this decision in *Morris-Scarborough-Moffitt Co. v. Express Co.* was rendered, the Supreme Court of the United States, the final authority on these matters, held on a question relevant to this inquiry that, 'Notwithstanding the creation of the Interstate Commerce Commission and the delegation to it by Congress of the control of certain matters, the State may, in the absence of express action by Congress or by such commission, regulate for the benefit of its citizens local matters indirectly affecting interstate commerce.' This principle was announced and sustained in *R. R. v. Flour Mill,* 211 U. S., 612, a case which involved the right of the court to compel the railroad company or common carrier to place cars on a siding which had been prepared for the purpose and for the benefit and. convenience of a flouring mill engaged in making shipments of interstate commerce."

The above decisions have been since followed by *Connor, J.,* 150 · N. C., 575, 592, with full review of the authorities and no dissent. In fact, the duty to receive freight "whenever tendered" was a common-law· duty. *Alsop v. Express Co.,* 104 N. C., 278, cited and approved in *Garrison v. R. R., supra,* 582.

That the interstate commerce did not begin till the goods were accepted for shipment and bill of lading issued is held. *Match Co. v. Ontonagon,* 188 U. S., 94, citing *Coe v. Errol,* 116 U. S., 517, where *Bradley, J.,* held that "not till goods have begun to be transported from one State to another do they become the subjects of interstate commerce and as such subject to Federal regulation." In this opinion (p. 528) he says: "It

is true, it was said in the case of the *Daniel Ball,* 10 Wall., 565, 'Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity has commenced.' But this movement does not begin until the articles have been shipped or started for transportation from the one State to the other. * * * Until shipped or started on its final journey out of the State, its exportation is a matter altogether *in fieri,* and not at all a fixed and certain thing."

Besides, the statutory enforcement, under penalty, of the common-law duty to accept freight "whenever tendered" is not in the scope or terms of any act of Congress, and is neither an interference with nor a burden upon interstate commerce, but in aid of it.

Exceptions 9, 10 and 11 are for refusal of prayers based on the theory that the goods were accepted for shipment 28 January, 1907, which is not supported by evidence, and were properly refused. *Hassard-Short v. Hardison,* 117 N. C., 60.

Exceptions 17, 18, 19, 20, 21, 22 and 23 present only one question, and may, therefore, be treated together. Did the plaintiff have the right to bring this action? Was he the aggrieved party? The law is correctly set forth in the following citations: "The shipper of the goods is the party aggrieved and is the one entitled to sue for the penalty prescribed in Revisal, sec. 2631, which arises from the wrongful refusal of the carrier's agent to accept them for transportation. *Reid v. R. R.,* 149 N. C., 423; *s. c.,* 150 N. C., 753.

"In giving the penalty to the party aggrieved the statute simply designates the person who has the right to sue and restricts it to him who by contract has acquired the right to demand that the service be rendered. The party aggrieved in statutes of this character is the one whose legal right is denied, and the penalty is enforcible independent of pecuniary injury." *Rollins v. R. R.,* 146 N. C., 156; *Cardwell v. R. R., ib.,* 218; *Summers v. R. R.,* 138 N. C., 295.

This machinery had been shipped to the plaintiff on approval, and as it proved unsatisfactory, it was the plaintiff's duty, if it would relieve itself of liability, to return it to the vendors at Saginaw, Mich., and it had the legal right to demand of the defendant its transportation to that point, and was the party aggrieved by failure to do so.

*Connor, J.,* speaking for a unanimous Court, said in *Garrison v. R. R.,* 150 N. C., 586: "The defendant next urges that the penalty of $50 for each day the said company refuses to receive said shipment can be recovered only when a tender is made on each day. We cannot concur in that view. The plaintiff hauled his lumber to the defendant's regular depot,

and with his consent placed it upon the car (in this case, in its depot), demanding a bill of lading, which was refused. Plaintiff says he went to the agent two or three times and asked if he had shipped it, and he said he had not. * * * To require the defendant to haul the lumber home and return it to the depot each day, or to go through the empty form of making a constructive tender, imposes either an unwarranted hardship or savors of trifling with a man's substantial rights. The plaintiff left the lumber on the car with a standing tender and demand that it be shipped. * * * The statute would be of little value as a remedy for an existing evil if the narrow construction is given as contended by defendant. The Legislature evidently intended to impose a penalty for each day upon which the freight was at the depot ready for shipment. Each day's delay in shipping was 'a refusal to ship' within the meaning of the statute."

The verdict of the jury established that the defendant failed and refused for sixty-one days to receive said goods for shipment. The plaintiff remitted all in excess of the penalty for forty days.

If the defendant had offered to ship to the end of its line, and declined to ship farther for lack of rates, a different point might have been presented; but there is no such exception in the record or in appellant's brief, and more than one of defendant's prayers is predicated on its refusal to issue any bill of lading because the agent at Burlington did not have the rates to Saginaw, though he had applied to the agent at Greensboro for them. But the neglect of the agent at Greensboro, or of those "higher up," was the failure and default of the defendant. Besides, if the defendant had issued the bill of lading, it is common knowledge that it would have contained the words "said company agrees to carry to its usual place of delivery, if on its road, *otherwise to deliver to another carrier on the route to said destination."* These words, always used in such cases, are retained in the bill of lading prescribed by the Interstate Commerce Commission. The plaintiff asked for no other kind of bill of lading, and could not have expected the defendant to be responsible for shipment beyond the end of its own line. The defendant refused to issue any bill of lading at all (which would have been, of course, in the usual form for such shipments) or to ship at all, and the defendant is liable. *Twitty v. R. R.,* 141 N. C., 355, in which the opinion is by *Brown, J.,* is exactly in point.

Affirmed.

BROWN, J., *dissenting:* The facts appearing from the plaintiff's evidence are as follows: On 28 January, 1907, plaintiff delivered to defendant at its depot in Burlington, North Carolina, one blowpipe machine, with directions to ship it to Allison & Curtis Manufacturing Company, Saginaw, Michigan. The blowpipe was not the property of the plaintiff, but had been sent on trial and was being returned to the owners. The defendant's agent stated that he had no rates on Saginaw, Mich., and could not ship the blowpipe until he could get them. Plaintiff's agent said that was all right, that he would pay freight as soon as he got bill of lading. The blowpipe was placed on the platform of defendant's depot. Defendant's agent tried to get the rates next day from the division freight agent's office at Greensboro, but did not succeed in getting them until 1 April, 1907, and two days thereafter the bill of lading was issued and the pipes were shipped.

The plaintiff claimed an indebtedness by way of penalty for $3,050, under the statute of this State, Revisal 1905, sec. 2631, but did not make a claim for any actual damage sustained by the delay. Whether from motives of benevolence, fearing that such drastic penalties in a transaction of such small value will bankrupt the defendant, or whether from fear of removal to the Federal courts, for some reason, the plaintiff demands judgment for only $2,000.

1. I am of opinion that under the language and spirit of the statute, the plaintiff is not the party aggrieved, and therefore cannot maintain this action. It is admitted by plaintiff's witness that the goods were not plaintiff's property, but the property of the Allison & Curtis Company, of Saginaw, Mich.; that they had been sent out for examination, and were being returned. In returning the pipes, the title to which had never been in plaintiff, the clerk of plaintiff was acting for the Allison Company.

If the defendant is liable at all for a penalty it is liable to the Allison Company, for that company alone has sustained any actual damage by delay. The statute plainly designates who is the party aggrieved, by coupling him with the one who has sustained actual damage, in these words: "and shall pay to the party aggrieved the sum of $50 for each day said company refuses to receive said shipment of freight, and all damages actually sustained by reason of the refusal to receive the freight." This language is peculiar to this statute, and does not appear in the other penalty laws. Unless the plaintiff can recover actual damages incident to the delay, then it follows that the penalty must go to the party who has sustained them.

In this case it is admitted that it is the consignee who owned the property, and to whom it was being returned, and who alone could be endamaged in any way by the delay. It follows that the consignee alone can sue for the penalty. This is the principle laid down by this Court in *Stone v. R. R.,* 144 N. C., 220, and as late as last term of this Court by *Mr. Justice Walker* in *McRackan v. R. R.,* 150 N. C., 332.

It is plain to me that the General Assembly has not subjected the defendant to two penalties, one to consignor and one to consignee, but by the express language of the act has given the one penalty to the party who has sustained actual damage. It is therefore manifest that a judgment against defendant in this action would be no bar to a recovery by the Allison & Curtis Company for actual damages and for this same penalty in connection therewith.

2. I am of opinion that this transaction is one of interstate commerce, to which section 2631 of our Revisal cannot apply.

This is especially true since the act of Congress of 29 June, 1906, 34 Stat. L., 584, by which Congress has extended its jurisdiction over the whole subject of interstate shipments and ousted that of the States, if they ever had any, to regulate or to penalize carriers in respect to such shipments. This exact question is discussed in the dissenting opinion, concurred in by *Justice Walker* and myself, in *Reid v. R. R.,* 150 N. C., 766, in which I cited *R. R. v. Mays,* 201 U. S., 321, as direct authority against the right of a State to penalize a transaction of this kind, upon the ground that it is an attempt to regulate and impose a burden upon interstate commerce.

It would seem to me that a statute which permits the recovery as penalty of over $3,000 in a small transaction by a party who has sustained no loss, and claims no actual damage, does impose an unreasonable burden upon interstate or any other kind of commerce, which few common carriers can bear and still perform their duties to the public.

It appears to me to be immaterial upon whom rests the burden of proving that defendant's schedules had not been filed and published in accordance with the act of Congress. The act is cited for the purpose of showing that by its regulations and requirements Congress has itself assumed exclusive control of this kind of commerce, and thus ousted that of the States. If it is material, then it appears from plaintiff's testimony (defendant offered none) that defendant company had no rates to Saginaw, Mich., and, presumably, had filed and published none, as Saginaw is not on defendant's lines. There are many lines of railway, belonging to different carriers, between Burlington and Saginaw, and surely the burden of proof cannot rest on this

defendant to show that these several carriers had not filed and published their rates in accordance with the act.

3. There is another, stronger reason which impels me to believe that the General Assembly never intended the statute to apply to a transaction of this kind.

Before this plaintiff can recover the penalty it must show that the defendant was under a legal obligation to accept the pipes for transmission to Saginaw, Mich., and to give a bill of lading to that point.

It is universally held in this country that a common carrier cannot be compelled to accept freight for shipment and delivery to a point beyond its own lines. It may voluntarily contract to do so, but it cannot be compelled by any legislative authority. Hutchinson on Carriers, sec. 145, and cases cited in notes.

As said in the dissenting opinion referred to in *Reid v. R. R., supra:* "The liability of the carrier beyond the terminus of its own line must be based on contract, and no authority has been shown, and none exists, so far as my researches have discovered, to the effect that a State can compel an interstate carrier to enter into such a contract and give a through bill of lading to points in another State beyond its own lines, and penalize the carrier for its refusal."

It is not to be supposed that the Legislature of this State intended to impose a penalty upon a common carrier for refusing to enter into a contract of carriage which it had no power to compel it to enter into.

This principle of law was practically recognized in the opinion of the Court in *Reid v. R. R., supra,* p. 765, but the Court held that Scottville, Tenn., was on defendant's line of railway, according to the evidence in that case. In this respect that case differs materially from this, for it is a matter of common knowledge, of which courts may take judicial notice, that the Southern Railway Company's lines do not extend anywhere near to the State of Michigan. *Harper v. Express Co.,* 144 N. C., 639. Therefore, I take it to be undeniable that when the plaintiff tendered the pipes to defendant's agent at Burlington, N. C., and demanded a bill of lading to Saginaw, Mich., the agent had a right to refuse the proffered shipment altogether, unless the shipper should signify that he desired a bill of lading to the nearest point on defendant's own line of railway, which in this case was not done.

Giving the demanded bill of lading to Saginaw was a matter of private contract, and the refusal to do so was not a violation of any public duty which the defendant owed plaintiff. Therefore, defendant's agent acted well within his rights when he refused to give a bill of lading, and thus enter into a written con-

DEPPE *v.* RAILROAD.

tract to deliver the goods at Saginaw, until, through the traffic department of the defendant, joint rates with the other carriers had been arranged.

It is a matter of general knowledge that transportation rates all over the United States are being constantly changed, and it is impossible for any common carrier to keep track of the various rates to every railway station in this Union and to be able at once to give them on demand. Under such circumstances they have, in my opinion, the right to refuse such shipments altogether or to hold up the issue of bills of lading until the necessary inquiries are made.

This Court has held that a refusal to issue a bill of lading at once upon tender of the freight to the point named by the shipper is a refusal to receive, and brings down upon the carrier the penalty given in section 2631.

This action is brought to recover the penalty for refusal to issue the bill of lading to Saginaw, and not for a delay in shipping the goods after receipt, and, under the opinion of the majority, the plaintiff, if he had asked it, would be entitled to recover $50 per day from 28 January, when the bill of lading was demanded, to 3 April, when it was issued, although this contract was one which, it must be admitted, the State of North Carolina had no power to compel the defendant to enter into.

I am unable to reconcile such decision with the well-settled principles of law to which I have adverted.

Mr. Justice WALKER concurs in this dissenting opinion.