# HOUSTON AND TEXAS CENTRAL RAILROAD COMPANY v. MAYES.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE· THIRD DISTRICT OF THE STATE OF .TEXAS.

No. 198.  Argued March 8, 1906.—Decided April 2, 1906.

An absolute requirement that a railroad engaged in interstate commerce. shall furnish a certain number of cars on a specified day, to transport merchandise to another State, regardless of every other consideration except strikes and other public calamities, transcends the police power of the States and amounts to a burden upon interstate commerce; and articles 4497–5000, Rev. Stat. Texas, being such a requirement, are, when applied to interstate commerce shipments, void as a violation of the commerce clause of the Federal Constitution.

Such a·regulation cannot be sustained as to interstate commerce shipments as an exercise of the police power of the State.

· THIS was an action begun by Mayes in the District Court of Llano County, Texas, against the Houston and Texas Central Railroad Company to recover a penalty of $475, by reason of defendant's failure to furnish seventeen stock cars, applied for in

VOL. CCI—21

writing by the plaintiff under the provisions of certain statutes of Texas hereinafter referred to, for the purpose of shipping plaintiff's cattle from Llano, Texas, to Red Rock, Oklahoma, and for damages occasioned by defendant's negligence.

The petitioner alleged that the defendant company formed with two other railroad companies a continuous line from Llano to Red Rock, and were engaged as common carriers in the business of shipping live stock and other freight; that on April 9, 1903, plaintiff, being the owner of six hundred and twenty-five head of cattle, made application in writing to the local agent of the road for seventeen stock cars to be delivered on April 20, and deposited with the agent one-fourth of the freight on the same, namely, $268.82, promising to pay the remainder on demand, and that he afterwards paid the same; that upon the day named, April 20, he had cattle sufficient to load the cars, delivered them to the defendant at its stock pens at Llano for shipment, but the defendant failed to furnish the cars, and did not furnish the same until the afternoon of the twenty-first of April, 1903.

The trial resulted in a judgment in favor of the plaintiff for $425 penalty for delay, and $500 damages to the stock while in the pens at Llano. This judgment was affirmed by the Court of Civil Appeals, and an application for a writ of error to the Supreme Court of the State was overruled.

*Mr. Maxwell Evarts,* with whom *Mr. Robert S. Lovett, Mr. James A. Baker* and *Mr. Gordon M. Buck,* were on the brief, for plaintiffs in error:

The Texas statutes as construed by the highest courts of that State impose upon a railroad company engaged in interstate commerce the burden of furnishing, upon demand, cars for interstate transportation, in unlimited numbers, within a time arbitrarily fixed by the statutes without regard to the circumstances or facilities of the company; and upon failure, from inability or other cause, to furnish the cars within the prescribed period, the company is subjected to severe penalties for failure

or mere delay in complying with the statutory requirements. This is a direct burden upon interstate commerce, and is such a regulation of commerce between the States as is vested in Congress.

The statutes should have been construed as intended to apply only to intrastate shipments, but the state courts declined to so limit them; and of course this court is bound by the interpretation of the statutes by the state court and must consider them as having been intended by the legislature to apply to interstate commerce.

The power of Congress to regulate commerce among the States is exclusive. *Brown* v. *Maryland,* 12 Wheat. 419, 446; *Cook* v. *Pennsylvania,* 97 U. S. 574. Interstate transportation is interstate commerce. *State Freight Tax Case,* 15 Wall. 275; *United States* v. *Freight Association,* 166 U. S. 312.

The intention of the Constitution was to confer the power to regulate interstate commerce exclusively upon Congress and not to divide the power between the state legislatures and Congress. One of the chief objects of the Constitution was to rid commerce of the conflicting, vexatious and burdensome restrictions, which, under the Articles of Confederation, had been imposed by the various States. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Passenger Cases,* 7 How. 383; *State Freight Tax Case,* 15 Wall. 279; *Hall* v. *DeCuir,* 95 U. S. 485; *Wabash R. R. Co.* v. *Illinois,* 118 U. S. 557; *Pickard* v. *Pullman Co.,* 117 U. S. 34, 46; *Fargo* v. *Michigan,* 121 U. S. 238, 240; *Leloup* v. *Mobile,* 127 U. S. 640; *Almy* v. *California,* 24 How. 169; *Woodruff* v. *Parham,* 8 Wall. 123; *American Express Co.* v. *Iowa,* 196 U. S. 133.

The matter sought to be regulated is in no sense local but is national in character and importance and obviously admits of national regulation. From the first, certain state laws relating to pilotage, quarantine, etc., were sustained notwithstanding an incidental effect upon interstate and foreign commerce. *Hall* v. *DeCuir,* 95 U. S. 485, 487; *Cooley* v. *Board of Wardens,* 12 How. 299; *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, 209. See also *Wilton* v. *State,* 91 U. S. 275; *Robbins*

v. *Shelby Taxing District,* 120 U. S. 489; *County of Mobile* v. *Kimball,* 102 U. S. 691; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Brown* v. *Houston,* 114 U. S. 622; *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Louisville & Nashville Ry.* v. *Eubank,* 184 U. S. 27; *Illinois Central Ry.* v. *Illinois,* 163 U. S. 142; *Cleveland &c. Ry.* v. *Illinois,* 177 U. S. 514.

If the State ever possessed such power it was only until Congress should act, and Congress having assumed it the State is no longer entitled to exercise it. Since Congress has acted and has provided a system of laws regulating railroads as instruments of interstate commerce in great detail, it has excluded the power of the States to act upon the subject. *Bowman* v. *Chicago &c. Ry.,* 125 U. S. 465; *Sinnot* v. *Davenport,* 22 How. 227.

The defense of state legislation in violation of the Federal Constitution that it is within the police power is untenable in this case. *Railroad Co.* v. *Husen,* 95 U. S. 465; *License Cases,* 5 How. 504, 599; *Chy Lung* v. *Freeman,* 92 U. S. 275; *Robbins* v. *Shelby County District,* 120 U. S. 489.

The Texas statutes as applied in this case plainly regulate interstate commerce and are therefore void. See *Central of Georgia Ry.* v. *Murphy,* 196 U. S. 194.

Nor can it be said, as was said by the court, in *Western Union Tel. Co.* v. *James,* 162 U. S. 650, that the statute merely provides a penalty for enforcing more completely a duty which exists at common law.

The plaintiff in error did not owe any duty to furnish cars to be carried to a destination beyond its own line, nor did it owe a duty to furnish cars at a certain hour of a certain day or otherwise than within a reasonable time.

In compelling the railroad company to furnish cars to go beyond its own line and out of its possession into a distant State, with no provision for their return or for compensation, the State deprives the railroad company of property without due process of law, contrary to the Fourteenth Amendment.

*Coles* v. *Railroad Co.* (Ga.), 45 Am. & Eng. Railroad Cases, 330; *Atchison &c. Co.* v. *Denver &c. Co.*, 110 U. S. 667, 680; *Gulf &c. Ry. Co.* v. *Miami &c. Co.*, 86 Fed. Rep. 419; *Post* v. *Southern Ry. Co.*, 103 Tennessee, 203; *Pittsburg &c. R. Co.* v. *Morton*, 61 Indiana, 573; *Chicago &c. R. R. Co.* v. *Chicago*, 166 U. S. 226; *Burlington, C. R. & N. Ry.* v. *Dey*, 82 Iowa, 312, distinguished; see *S. C.*, 89 Iowa, 13, at p. 25.

*Mr. T. W. Gregory*, for defendant in error, submitted:

The statutes complained of by plaintiffs in error, as applied to interstate shipments, do not attempt any unlawful regulation of interstate commerce, but are a proper exercise of the police power of the State and are valid.

The cattle in this case did not become the subject of interstate commerce until they were delivered to and received by the carrier for transportation on the journey. *Coe* v. *Erroll*, 116 U. S. 517; *The Daniel Ball*, 10 Wall. 557; *Ex parte Koehler*, 30 Fed. Rep. 867; *In re Greene*, 52 Fed. Rep. 113; *Railway Co.* v. *Sherwood*, 84 Texas, 125. By analogy to the rule announced in these cases it has been held, that a train consisting of empty freight cars being prepared and taken to a point without the State for the purpose of transporting coal within the State is not engaged in interstate commerce. *Norfolk &c. R. R. Co.* v. *Commonwealth*, 93 Virginia, 57.

The plaintiff in error was conducting its business as a common carrier in the State, subject necessarily to the condition that it would conform to such reasonable regulations as the State might from time to time establish, that were not in violation of the supreme law of the land. In the absence of legislation by Congress, it would be going very far to hold that such an enactment as the one complained of in this case was in itself a regulation of interstate commerce. It was for the State to take into consideration all the transactions affecting freight traffic within its limits, and as far as practicable, make such regulations as were just to all who might have occasion to ship over the road. It was entitled, of course, to provide for

the convenience of shippers desiring to have freight transported on domestic trains, and this the statutes in question undertook to do, by requiring carriers to furnish cars promptly upon proper demand. But the State was not bound to ignore the convenience of those who desired to have freight transported to points beyond the limits of the State. *Cherokee Nation* v. *Southern Kansas R. Co.*, 135 U. S. 641.

These regulations ought to be regarded as rather in aid of interstate commerce and a rightful exercise of the police powers of the State. *Chicago, M. & St. P. R. Co.* v. *Solan*, 169 U. S. 133; *Western Union Tel. Co.* v. *James*, 162 U. S. 650; *N. Y., N. H. & H. R. Co.* v. *New York*, 165 U. S. 628; *Richmond & A. R. Co.* v. *Patterson Tob. Co.*, 169 U. S. 311; *Escanaba & L. M. Transp. Co.* v. *Chicago*, 107 U. S. 678; *M., K. & T. R. Co.* v. *McCann*, 174 U. S. 580.

The statutes are not in violation of the Fourteenth Amendment; they do not prescribe rates or interfere in any manner with the carrier's freedom of contract.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

'This case involves the constitutionality of certain articles of the Revised Statutes of Texas, set forth in the margin,[1] the

---

[1] "ART. 4497. When the owner, manager or shipper of any freight of any kind shall make application in writing to any superintendent, agent or other person in charge of transportation, to any railway company, receiver or trustee operating a line of railway at the point the cars are desired upon which to ship any freight, it shall be the duty of such railway company, receiver, trustee or other person in charge thereof, to supply the number of cars so required, at the point indicated in the application, within a reasonable time thereafter, not to exceed six days from the receipt of such application, and shall supply such cars to the persons so applying therefor, in the order in which such applications are made, without giving preference to any person; provided, if the application be for ten cars or less, the same shall be furnished in three days; and provided further, that if the application be for fifty cars or more, the railway company may have ten full days in which to supply the cars. (As amended by the act of 1899, page 67.)

"ART. 4498. Said application shall state the number of cars desired, the

material requirement of which is that when the shipper of freight shall make a requisition in writing for a number of cars to be furnished at any point indicated within a certain number of days from the receipt of the application, and shall deposit one-fourth of the freight with the agent of the company, the company failing to furnish them shall forfeit $25 per day for each car failed to be furnished, the only proviso being that the law "shall not apply in cases of strikes or other public calamity."

The defense was that this statute was not applicable to demands made for cars to be sent out of the State and to be used in interstate commerce; and as the shipment was intended for Oklahoma, the act did not apply, and the defendant was not liable. The question is whether the statute, applied as it is

---

place at which they are desired and the time they are desired; provided, that the place designated shall be at some station or switch on the railroad.

"ART. 4499. When cars are applied for under the provisions of this chapter, if they are not furnished, the railway company so failing to furnish them shall forfeit to the party or parties so applying for them the sum of twenty-five dollars per day for each car failed to be furnished, to be recovered in any court of competent jurisdiction, and all actual damages that such applicant may sustain.

"ART. 4500. Such applicant shall, at the time of applying for such car or cars, deposit with the agent of such company one-fourth of the amount of the freight charge for the use of such cars, unless the said road shall agree to deliver said cars without such deposit. And such applicant shall, within forty-eight hours after such car or cars have been delivered and placed as hereinbefore provided, fully load the same, and upon failure to do so, he shall forfeit and pay to the company the sum of twenty-five dollars for each car not used; provided, that where applications are made on several days, all of which are filled upon the same day, the applicant shall have forty-eight hours to load the car or cars furnished on the first application, and the next forty-eight hours to load the car or cars furnished on the next application, and so on; and the penalty prescribed shall not accrue as to any car or lot of cars applied for on any one day until the period within which they may be loaded has expired. And if the said applicant shall not use such cars so ordered by him, and shall so notify the said company or its agent, he shall forfeit and pay to said railroad company, in addition to the penalty herein prescribed, the actual damages that such company may sustain by the said failure of the applicant to use said cars." (As amended by the act of 1899, page 67.)

Art. 4502 contains the following proviso: "that the provisions of this law shall not apply in cases of strikes or other public calamity."

by the Texas court to interstate shipments, is an infringement upon the power of Congress to regulate interstate commerce.

That, notwithstanding the exclusive nature of this power, the States may, in the exercise of their police power, make reasonable rules with regard to the methods of carrying on interstate business; the precautions that shall be used to avoid danger, the facilities for the comfort of passengers and the safety of freight carried, and, to a certain extent, the stations at which stoppages shall be made, is settled by repeated decisions of this court. Of course, such rules are inoperative if conflicting with regulations upon the same subject enacted by Congress, and can be supported only when consistent with the general requirement that interstate commerce shall be free and unobstructed, and not amounting to a regulation of such commerce. As the power to build and operate railways, and to acquire land by condemnation, usually rests upon state authority, the legislatures may annex such conditions as they please with regard to *intra*state transportation, and such other rules regarding *inter*state commerce as are not inconsistent with the general right of such commerce to be free and unobstructed.

The exact limit of lawful legislation upon this subject cannot in the nature of things be defined. It can only be illustrated from decided cases, by applying the principles therein enunciated, determining from these whether in the particular case the rule be reasonable or otherwise.

That States may not burden instruments of interstate commerce, whether railways or telegraphs, by taxation, by forbidding the introduction into the State of articles of commerce generally recognized as lawful, or by prohibiting their sale after introduction, has been so frequently settled that a citation of authorities is unnecessary. Upon the other hand, the validity of local laws designed to protect passengers or employés, or persons crossing the railroad tracks, as well as other regulations intended for the public good, are generally recognized. An analysis of all the prior important cases upon this point will be found in the opinion of the court in *Cleveland &c. R. R. Co.* v.

*Illinois,* 177 U. S. 514, wherein a requirement that express trains intended only for through passengers should stop at every county seat, when ample accommodations were provided by local trains, was held to be an unreasonable burden. Other similar cases regulating the stoppage of trains are *Illinois Central R. R. Co.* v. *Illinois,* 163 U. S. 142; *Gladson* v. *Minnesota,* 166 U. S. 427; *Lake Shore &c. Ry. Co.* v. *Ohio,* 173 U. S. 285. In the same line is the more recent case of *Wisconsin &c. R. R. Co.* v. *Jacobson,* 179 U. S. 287.

While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers, and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting and ventilation of passenger cars, the furnishing of food and water to cattle and other live stock, we think an absolute requirement that a railroad shall furnish a certain number of cars at a specified day, regardless of every other consideration except strikes and other public calamities, transcends the police power of the State and amounts to a burden upon interstate commerce. It makes no exception in cases of a sudden congestion of traffic, an actual inability to furnish cars by reason of their temporary and unavoidable detention in other States, or in other places within the same State. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads, involving a detention of traffic, the breaking of bridges, accidental fires, washouts or other unavoidable consequences of heavy weather.

A dereliction of the road in this particular, which may have occurred from circumstances wholly beyond the control of its officers, is made punishable not only by damages actually incurred by the shipper in the detention of his stock, but in addition thereto by an arbitrary penalty of $25 per car for each day of detention. The penalty which was assessed in this case, though the detention was only for one day, amounted to nearly as much as the damages, and might in another case amount to far more.

While perhaps the road may have no right to complain of that portion of the statute which assumes to provide for its own protection, it is illustrative of its general spirit that, if the shipper does not fully load his cars within forty-eight hours after their arrival, he shall forfeit $25 for each car, or if the consignee shall fail to unload them within forty-eight hours after their delivery, at the place of consignment, which in the case of interstate shipments would be in another State, he shall also forfeit $25 per day for each car unloaded.

In this connection the recent case of *Central &c. R. R. Co.* ·v. *Murphey*, 196 U. S. 194, is instructive. In that case we held that the imposition by a state statute, upon the initial or any connecting carrier, of the duty of tracing the freight and informing the shipper, in writing, when, where or how, and by which carrier the freight was lost, damaged or destroyed, and of giving the names of the parties and their official position, if any, by whom the truth of the facts set out in the information could be established, is, when applied to interstate commerce, a violation of the commerce clause of the Federal Constitution; and an act of the legislature of Georgia imposing such a duty on common carriers was held void as to shipments made from points in Georgia to other States.

· Although the statute in question may have been dictated by a due regard for the public interest of the cattle raisers of the State, and may have been intended merely to secure promptness on the part of the railroad companies, in providing facilities for speedy transportation, we think that in its practical operation it is likely to work a great injustice to the roads, and to impose heavy penalties for trivial, unintentional and accidental violations of its provisions, when no damages could actually have resulted to the shippers.

It should be borne in mind that the act does not apply to cattle alone, but to all cases "when the owner, manager or shipper *of any freight of any kind* shall make application in writing," etc. The duty of the railroad company to furnish the cars within the time limited is peremptory and admits of

no excuses, except such as arise from strikes and other public calamities. If, for instance, the owner of a large quantity of cotton should make a requisition under the act for a number of cars, the railway company would be bound to furnish them upon the day named, or incur a penalty of $25 for each car, though the detention of the cotton involved no expense to the owner, or may even have resulted in a benefit to him through a rise in the market.

While railroad companies may be bound to furnish sufficient cars for their usual and ordinary traffic, cases will inevitably arise where by reason of an unexpected turn in the market, a great public gathering, or an unforeseen rush of travel, a pressure upon the road for transportation facilities may arise, which good management and a desire to fulfill all its legal requirements cannot provide for, and against which the statute in question makes no allowance.

Although it may be admitted that the statute is not far from the line of proper police regulation, we think that sufficient allowance is not made for the practical difficulties in the administration of the law, and that, as applied to interstate commerce, it transcends the legitimate powers of the legislature.

*The judgment of the Court of Civil Appeals is, therefore, reversed, and the cause remanded to that court for further proceedings.*

Mr. JUSTICE WHITE, not having heard the argument, took no part in the decision of this case.

THE CHIEF JUSTICE, MR. JUSTICE HARLAN and MR. JUSTICE McKENNA dissented.