There was evidence, on the part of plaintiffs, tending to show that, on or about 25 June, 1906, the plaintiff firm, having received an order for a carload of shingles from one James Haddox, at Scottsville, Tenn., applied to P. B. Gunnels, who was then agent of defendant company at Rutherfordton, N.C. for a car; the same was furnished and loaded with the shingles by plaintiffs, on 2 July, shipping instructions given, prepayment of freight tendered and bill of lading demanded; that the agent of defendant refused to give bill of lading, or ship the goods, assigning for reason that he did not know where Scottsville, (755) Tenn., was, nor the rate thereto. Plaintiffs demanded that the goods be shipped, and told the agent they would prepay any additional amount found to be due, and requested that when the agent got ready to ship to `phone to plaintiffs and they would come over and pay the freight due; that defendant's agent failed and refused to ship the shingles, till 17 July, when one Castle came to take over the agency, and being told, on inquiry of plaintiffs about the carload of shingles, and what the trouble was, he asked for shipping instructions, which were given, to James Haddox, Scottsville, Tenn., and on 19 July, the freight was paid, the bill of lading given, and shingles shipped as directed, arriving at their destination without further let or hindrance.
Plaintiffs further testified that they had received no pecuniary injury by reason of the delay; that Gunnels still had charge of the depot when the shingles were shipped, and that he left about that time, and Castle took charge.
There was evidence, on the part of defendant, that Scottsville, Tenn., was an industrial siding on the Knoxville and Augusta road, eight or ten miles out of Knoxville, Tenn., established for the convenience of persons shipping brick from that point; that there was no depot or regular agent there, but goods were rebilled to that point at Rockford, a regular station on the same road, some two miles distant.
One W. P. Hood, testifying for defendant, stated that he was superintendent of the Knoxville and Augusta road, and that this road was operated as an independent line; that there was no such place on that road as Scottsville, but an industrial siding called Scottsville, at the point indicated, a flag station, eight or ten miles out from Knoxville, and that bills of lading for goods to and from that point were made out at Rockford, a regular station, some two miles distant. On cross-examination the witness stated that his remittances from the operation of the road were made to the treasurer of the defendant company; that his reports were made to the auditor of such company, and that, since the consolidation of the East Tennessee and Virginia Railroad with the old Richmond and Danville, the defendant company had paid all the employees of the Knoxville and Augusta road their (756) salaries. *Page 620 
The court below charged the jury, in part, as follows:
"The burden is on the plaintiffs to show, by the greater weight of the evidence, that the defendant is indebted to plaintiffs. This suit is brought to recover penalty for refusal on the part of the defendant, Southern Railway Company, to receive a carload of shingles for shipment to James Haddox, Scottsville, Tenn. In order to entitle plaintiffs to recover it is necessary for the jury to find from the evidence, by the greater weight thereof, first, that the defendant is a common carrier; that is admitted; second, that the plaintiffs tendered the carload of shingles for shipment, and, third, that defendant refused to receive the same for shipment. If the jury finds from the evidence, by the greater weight thereof, first, that the plaintiffs, Reid Beam, tendered the carload of shingles to Gunnels, the defendant's agent at Rutherfordton, and furnished him with shipping directions and offered to prepay the freight, and demanded a bill of lading, and that the plaintiffs demanded that the car be shipped, then the plaintiffs would be entitled to recover, unless you find from the evidence that the defendant failed and refused to ship by reason of facts intervening which defendant, by the exercise of reasonable care, could not have prevented or overcome. The defendant contends that the agent did not know where Scottsville was, and did not know the freight rate, and that therefore defendant is excused. If you find from the evidence, by the greater weight thereof, that Scottsville or Scottville was a flag station on a branch road under control of defendant company, then it was the business of the agent of defendant company to know where it was and to know the freight rate to that point; or if you so find that the plaintiffs told the agent that Scottsville or Scottville was a flag station on a branch road under control of Knoxville and Augusta Railroad and some seven or eight miles from Knoxville, and that statement was true, and further so find that, by the exercise of reasonable care and diligence on the part of the agent, he could have ascertained where the place was, and the rates, it was his duty to do so, and failure on his part to exercise such reasonable care would not excuse the defendant company. If (757) you find from the evidence, by the greater weight thereof, that defendant refused, on 2 July, to receive the car, simply on the ground that the agent did not know and could not, by the exercise of reasonable care, have ascertained the locality and rates, and you further find from the evidence, by the greater weight thereof, that the failure to ship up to the 19th was on the same ground and no other, then the plaintiffs would be entitled to recover $50 a day, as a penalty for such failure, for 14 days; this would exclude the day of shipment and also exclude the Sundays included between the dates, which would be $700." *Page 621 
The jury rendered a verdict as follows:
"Is the defendant indebted to the plaintiffs for the unlawful failure to receive a carload of shingles to be transported to Scottsville, Tenn., as alleged? If so, in what sum?" Answer: "Three hundred and fifty dollars."
There was judgment on the verdict for plaintiffs, and defendant excepted and appealed, and, having made eighteen exceptions, duly noted in the record, under different forms of statement, assigns for error —
"1. That the statute in question, Revisal, 1905, sec. 2631, is unreasonable and oppressive and in conflict with the Fourteenth Amendment to the Federal Constitution.
"2. That, as applied to interstate commerce, the same is in conflict with Article 1, sec. 8, clause 3, of said Constitution, (a) as an unlawful attempt to regulate commerce; (b) and, on the facts presented here, as amounting to distinct burden upon it."
The validity of these penalty statutes has been before the Court for consideration in many recent cases, and, in Efland v. R. R., 146 N.C. 138, this being a decision on a statute of kindred nature, the Court, in speaking to the power of a government to enact regulations of this character, said: "The right of the State to establish regulations for these public-service corporations, and over business enterprises in which the owners, corporate (758) or individual, have devoted their property to a public use, and to enforce these regulations by appropriate penalties, is now and has long been too firmly established to require or permit discussion." Citing Harrill v. R. R., 144 N.C. 532; Stone v. R. R., 144 N.C. 220; Walkerv. R. R., 137 N.C. 168; McGowan v. R. R., 95 N.C. 417; Branch v. R. R.,77 N.C. 347; R. R. v. Florida, 203 U.S. 261; R. R. v. Helms,115 U.S. 513; Mobile v. Kimball, 102 U.S. 691; Munn v. Illinois,94 U.S. 112.
The opinion then quotes from that of Associate Justice Field, in Helmsv. R. R., 115 U.S. 513, both on the right to enact such statutes and the necessity for their proper enforcement, as follows: "The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The *Page 622 
statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase, in many cases, double, and in some cases treble, and even quadruple the actual damages." And proceeds further: "And the right to establish such regulations for certain classes of pursuits and occupations, imposing these requirements equally on all members of a given class, has been made to rest largely in the discretion of the Legislature." Tullis v.R. R., 175 U.S. 348; Insurance Co. v. Daggs, 172 U.S. 562; McGowan v.Bank, 170 U.S. 286.
And the very statute in question here (Revisal, 1905, sec. 2631) has been approved and upheld in several of these cases as a just and reasonable exercise of the power indicated and both as to inter- and intrastate commerce. Garrison v. R. R., ante, 575; Twitty v. R. R., 141 N.C. 355;Currie v. R. R., 135 N.C. 536; Baggs v. R. R., 109 N.C. 279.
In Twitty v. R. R., supra, we have held that a refusal to receive goods for "transportation" and to issue a bill of lading therefor (759) amounts to a violation of this section, though the goods were received for storage.
In Garrison v. R. R., supra, it was held that the placing of goods for shipment in the car of the company, permitted by the agent, with a demand for shipment, and accompanied by a continuous offer of prepayment of freight, were facts from which a tender day by day should be inferred until the shipment was made.
Cotton Mills v. R. R., ante, 608, in no way conflicts with this position. That case only holds that where goods were on a platform, under circumstances leaving it doubtful whether they had been taken charge of by the company, with other facts which left the matter of a tender day by day in doubt, the question was properly referred to a jury to decide as to whether such tender had been made. And the opinion of the Court, on a former appeal in this cause (149 N.C. 423) is a direct decision on the validity of the statute to be enforced by orderly and proper procedure; the Court holding, on facts substantially similar to those presented here, as follows:
"1. A refusal by the carrier's agent to receive, at its depot, freight and transportation charges therefor, destined for a point on the carrier's road which was only a siding, and was not a regular station, is wrongful, and subjects the carrier to the penalty prescribed by Revisal, sec. 2631, when the refusal is on the ground that the agent did not know where the given destination was, and it appears that he could have ascertained that freight was ordinarily shipped there on waybills made out to a regular station on the carrier's road some two miles distant therefrom.
"2. When a shipment of freight and transportation charges are refused *Page 623 
by carrier's agent, because he did not know where its given destination was, and it appears that the name given was very slightly changed from that appearing on the `Official Railway Guide and Shipping Guide' used by the carrier, the fact that another agent, who afterwards took the place of the first, promptly learned the location of the destination and the rate, and gave bill of lading and made shipment, is evidence that the rate and destination could have been ascertained by the first from the information given him, in an action for the (760) penalty prescribed by Revisal, sec. 2631.
"3. The penalty arising under Revisal, sec. 2631, from the wrongful refusal of carrier's agent to accept an interstate shipment of freight bears no relation to the commerce clause of the Federal Constitution, for the penalty accrues before the freight is accepted for transportation.
"4. The shipper of the goods is the `party aggrieved,' and is the one entitled to sue for the penalty prescribed in Revisal, sec. 2631, which arises from the wrongful refusal of the carrier's agent to accept them for transportation."
It was chiefly urged for error, on the part of the defendant company, that the statute in question was invalid because an unlawful interference with interstate commerce, and we were referred by counsel to several decisions of the Supreme Court of the United States as tending to support their position; notably McNeil v. R. R., 202 U.S. 543; R. R. v. Mayes,201 U.S. 321; R. R. v. Murphy, 196 U.S. 194.
It may be, as indicated in the former opinion in this cause, that the commerce clause of the Federal Constitution is not involved in the case, on the ground therein stated, that the penalty accrues before the "freight is accepted for transportation," and on the principle applied in Coe v. Errol,116 U.S. 517; but conceding that the goods, when tendered for transportation to another State, as to matters involved in such transportation and in reference to these penalty statutes, should be considered and dealt with as interstate commerce, we are of opinion that the position of the counsel can not be sustained, and that they do not correctly interpret the cases cited and relied on by them.
In the case of Morris-Scarboro-Moffitt Co. v. Express Co., 146 N.C. 167, the plaintiffs sued for penalty imposed by section 2634 of the Revisal, for unlawful failure on part of defendant company to adjust and pay a valid claim for loss or damages to goods shipped from another State, and it was held
"2. Revisal, sec. 2634, is not repugnant to or in contravention of Article I, section 8, of the Constitution of the United States, conferring upon Congress the power to regulate commerce between (761) the States. The penalty is in direct enforcement of the duties incumbent on the carriers by law to adjust and pay for damages *Page 624 
due to their negligence; is imposed for a local default arising after the transportation has terminated; is not a burden on interstate commerce, but in aid thereof, and, in the absence of inhibitive congressional legislation, the matter is the rightful subject of State legislation."
And in the opinion, page 171, the Court said: "The decisions of the Supreme Court of the United States have uniformly held that under this clause of the Constitution commerce between the States shall be free and untrammeled by any regulations which place a burden upon it; and these decisions also hold that, in the absence of inhibitive congressional legislation, a State may enact and establish laws and regulations on matters local in their nature which tend to enforce the proper performance of duties arising within the State, and which do not impede, but aid and facilitate, intercourse and traffic, though such action may incidentally affect interstate commerce. Calvert on Regulation of Commerce, pp. 76, 152, 159." Citing in support of this position Mobile v. Kimball, 102 U.S. 691;Smith v. Alabama, 124 U.S. 465, 476; Telegraph Co. v. James,163 U.S. 650; R. R. v. Solan, 169 U.S. 133-137, and other authorities, and quoting from the opinion of Mr. Justice Matthews, in Smith v. Alabama,supra, as follows:
"It is among these laws of the States, therefore, that we find provisions concerning the rights and duties of the common carriers of persons and merchandise, whether by land or by water, and the means authorized by which injuries resulting from the failure properly to perform their obligations may be either prevented or redressed. A carrier, exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable according to the laws of the State for acts of nonfeasance or misfeasance committed within its limits. If he fail to deliver goods to the proper consignee, at the right time or place, he is liable, in action for damages, under the laws of the State in its courts; or if by negligence in transportation he inflicts injury upon the person of a passenger (762) brought from another State, a right of action for the consequent damage is given by the local law. In neither case would it be a defense that the law giving the right to redress was void as being an unconstitutional regulation of commerce by the State. This, indeed, was the very point decided in Sherlock v. Alling, above cited."
The Court then referred to the cases cited, and relied upon by defendant, as follows:
"We were referred by counsel to R. R. v. Murphy, 196 U.S. 195; R. R.v. Mayes, 201 U.S. 321; McNeal v. R. R., 202 U.S. 543, but we do not think that these decisions are in conflict with the views we have held to be controlling in the case before us. As we understand them, they all proceed upon the idea, not that the regulations in question *Page 625 
were void because they affected, in some way, interstate commerce, but because they interfered directly with intercourse and traffic between States and were of a character that imposed an undoubted and distinct burden upon them."
As showing that this is a correct deduction from these authorities, inMcNeill v. R. R., supra, Mr. Justice White, for the Court, said: "Without at all questioning the right of the State of North Carolina, in the exercise of its police authority, to confer upon an administration agency power to make reasonable regulations concerning the place, manner and time of delivery of merchandise moving in the channels of interstate commerce, it is certain that any regulation of such subjects made by the State, or under its authority, which directly burdens interstate commerce, is a regulation of such commerce and repugnant to the Constitution of the United States."
In Mayes v. R. R., supra, Associate Justice Brown, among other things, said: "While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting and ventilation of passenger cars, the furnishing of food and water to cattle and other live stock, we think an absolute requirement that a railroad shall furnish a certain number of cars at a specified day, regardless of every other consideration except strikes and other public calamities, transcends the police power of the State and amounts to a burden (763) upon interstate commerce. It makes no exception in cases of sudden congestion of traffic, an actual inability to furnish cars by reason of their temporary and unavoidable detention in other States or in other places within the same State. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads, involving a detention of traffic, the breaking of bridges, accidental fires, washouts or other unavoidable consequences of heavy weather."
And, in R. R. v. Murphy, supra, Mr. Justice Peckham, delivering the opinion, said: "The effect of such a statute is direct and immediate upon interstate commerce. It directly affects the liability of the carrier of freight destined to points outside the State, with regard to the transportation of articles of commerce; it prevents a valid contract of exemption from taking effect, except upon a very onerous condition, and it is not of that class of State legislation which has been held to be rather an aid to than a burden upon such commerce. The statute in question prevents the carrier from availing itself of a valid contract, unless such carrier comply with the provisions of the statute by obtaining information which it has no means of compelling another carrier *Page 626 
to give, and yet, if the information is not obtained, the carrier is to be held liable for the negligence of another carrier, over whose conduct it has no control. This is not a reasonable regulation in aid of interstate commerce, but a direct and immediate burden upon it."
In Garrison v. R. R., ante, 575, the Court has held, Connor, J., delivering the opinion, that the statute in question here is not an arbitrary requirement permitting no defense, but that "When the carrier shows the existence of conditions for which it is not responsible, preventing and rendering impossible the discharge of the duty, it will not be liable for the penalty," and quotes with approval from an opinion byAshe, J., as follows: "When the facts show that by force of circumstances for which it is in no way responsible the carrier was disabled from (764) performing the duty imposed by the statute, it would be unjust to punish it for failure to comply with its requirements."
To like effect is Whitehead v. R. R., 87 N.C. 255; Keeter v. R. R.,86 N.C. 346; Branch v. R. R., 77 N.C. 347. The statute, therefore, does not come under the condemnation expressed in these decisions of the United States Supreme Court, but it is always open to defendant to offer satisfactory excuse and explanation for an apparent default, and this opportunity was given the defendant on the trial of the present case.
Since the decision of Morris-Scarboro-Moffit Co. v. Express Co. was rendered, the Supreme Court of the United States, the final authority on these matters, has held, on a question relevant to this inquiry, that "Notwithstanding the creation of the Interstate Commerce Commission and the delegation to it by Congress of the control of certain matters, a State may, in the absence of express action by Congress or by such commission, regulate for the benefit of its citizens local matters indirectly affecting interstate commerce."
This principle was announced and sustained in R. R. v. Flour Mills,211 U.S. 612, a case which involved the right of the court to compel a railroad or a common carrier to place cars on a siding which had been prepared for the purpose and for the benefit and convenience of a flouring mill, engaged in making shipments of interstate commerce. So far as we have been enabled to discover, there has been no act of Congress or regulation of the Interstate Commerce Commission which undertakes to deal directly with this question of the reception of freight for shipment, certainly none in reference to its safety and prompt dispatch; and, until this is done, we are of opinion that the matter comes within the principle of the numerous authorities referred to, and continues to be a subject for proper and reasonable State regulation.
It does not appear from the testimony that the defendant has not filed its schedule of rates with the Interstate Commerce Commission to *Page 627 
Scottville, Tenn., for it can hardly be seriously contended that the difference between Scottville, Tenn., and Scottsville, Tenn., is of the substance. The presumption is that the company has complied with the law. And if it were otherwise, we are of opinion that the act of Congress and the orders of the commission made thereunder (765) requiring the publication of rates, was made for an entirely different purpose from that involved in this inquiry, and does not constitute such interfering action. See Harrell v. R. R.,144 N.C. 540, 541.
Nor do we think that the statute imposes any burden upon interstate commerce as applied to the facts of this particular case. While one of defendant's witnesses stated, in his examination-in-chief, that the Knoxville and Augusta road was operated as an independent line, the witness evidently could have meant only that a separate organization was maintained for purposes of local management and control. This is, no doubt, required by its charter or the general statutes of the State of Tennessee, but it is also conclusively established, from the statement of the witness on his cross-examination, that the Knoxville and Augusta road is operated by defendant company, all the money being sent to its treasurer, the reports being made to its auditor, and all salaries of all employees being paid by the defendant. This being true, the agent of the defendant should have known of the placing of this siding and the rate thereto, or should have ascertained the same in the exercise of reasonable care, and this was the only burden which was placed upon the defendant, and any fact or circumstance which might have tended to indicate hardship or oppression would seem to be effaced by the fact admitted, that in two days after the coming of a new man, and while the former agent was still in charge, the goods were received and shipped, and reached their destination in due course without further annoyance or delay.
Nor is there any merit in the suggestion that the plaintiffs suffered no pecuniary injury by reason of the delay. Speaking to this question, inSummers v. R. R., 138 N.C. 298, this Court said: "These penalties are not given solely on the idea of making pecuniary compensation to the person injured, but usually for the more important purpose of enforcing the performance of a duty required by public policy or positive statutory enactment."
We are of opinion that, in the absence of inhibitive congressional legislation, or of interfering action on the part of the Interstate Commerce Commission, the statute in question is a valid regulation (766) in direct and reasonable enforcement of the duties incumbent on defendant as a common carrier; that on the trial the defendant was afforded full opportunity to make defenses, and the facts presented *Page 628 
disclose no substantial excuse or explanation for its default; that no error appears in the record which gives the defendant any just ground of complaint, and the judgment against it is therefore affirmed.
No error.