## LARRY DOWNEY v. NORTHERN PACIFIC RAILWAY COMPANY.

Opinion filed February 25, 1910.

**Constitutional Law — Common Carriers — Carriage of Live Stock — Regulation of Speed — Police Power.**

An absolute requirement that it shall be the duty of every railroad, railroad corporation, railway company, express company, car company, and of every common carrier other than by water, by whatever name it may be called or by whomsoever operated, and which is wholly or in part engaged in the transportation of any kind of live stock by railroad within or to or from any point in this state, to transport any and all such live stock so by it being transported with the utmost diligence, and to maintain within this state in all trains so transporting any such live stock an average minimum rate of speed of not less than 20 miles per hour from the time any such live stock is loaded upon or into its cars until such train reaches its destination, deducting only in the computation of such average minimum rate of speed such reasonable time as any such live stock may be necessarily delayed in unloading to feed, water and rest, and in feeding, watering and resting and in reloading, is unconstitutional and void as an unreasonable exercise of the police power of the state.

Appeal from District Court, Grand Forks county, *Templeton*, J.

Action by Larry Downey against the Northern Pacific Railway Company.

Judgment for plaintiff and defendant appeals. Reversed with directions.

*Ball, Watson, Young & Hardy,* for appellant.

The statute is void as an unreasonable attempt to exercise the police power of the state. Houston & Texas Cent. R. R. v. Mayes, 201 U. S. 321; Cleveland etc., R. R. v. Ill., 177 U. S. 514.

*Skulason & Burtness,* for Respondents.

The statutes in question are a reasonable exercise of the police power. Lake Shore and Michigan Southern Railway Co., v. Ohio, 173 U. S. Reports, 285, 19 Sup. Ct. Rep. 465; 7 Cyc. 446; Western Union Telegraph Co., v. James, 162 U. S. 650, 16 Sup. Ct. Rep. 934; Erb v. Morasch, 177 U. S. 584, 20 Sup. Ct. Rep. 819; Hennington v. State of Georgia, 163 U. S. 299, 16 Sup. Ct. Rep. 1086; Davidson v. State 30 Am. Rep. 166; Clark v. Boston and M. R. R. Co

10 Atl. 676; Crawford v. Southern Ry. Co. 34 S. E. 80; Gulf C. and S. F. Ry. Co., v. Gray, et al., 24 S. W. 837.

CARMODY, J.   On June 13, 1907, plaintiff shipped two horses over defendant's road from Grand Forks, N. D., to Valley City, N. D., by way of Winnipeg Junction Minn.   He brought this action to recover upon two causes of action:   (1) For alleged actual damages resulting from defendant's delay in completing the shipment; and (2) to recover the statutory penalty provided in sections 4398. 4399, Rev. Codes 1905.   At the trial of the action, it was stipulated as follows:   "That the Northern Pacific Railroad Company owns and operates a branch line of railroad running from Grand Forks, N. D., across the Red river to and through East Grand Forks, in the state of Minnesota, and thence to Winnipeg Junction, where said branch line connects with the main line of said railway; that said main line owned and operated by the defendant runs from St. Paul, Minn., westerly to and through Winnipeg Junction, thence westerly through Minnesota, across the Red river to Fargo, N. D., and thence westerly to and beyond Valley City, N. D., that said company also owns and operates in the state of North Dakota a branch line running from Sanborn, a station on the main line near Valley City, to and through Rogers, N. D.; that the distance by the route described from Grand Forks, N. D., to East Grand Forks, Minn., is .6 of a mile; thence to Winnipeg Junction is 95 miles; thence to Fargo is 26 miles; thence to Valley City is 57.9 miles, a total of 179.5 miles, of which about 121 miles are in the state of Minnesota, and the remainder in the state of North Dakota; that it was expected and intended by both parties to the shipment made by the plaintiff that the horses so shipped should be carried between Grand Forks, N. D., and Valley City, N. D., over the route and the lines just described."   The car arrived in Fargo about 5 o'clock Friday morning, and was spotted at the stock chute in Valley City, N. D., so that it could be unloaded at 6 o'clock Saturday evening.   The distance between Fargo and Valley City is 57.9 miles.   It was 37 hours from the time the car arrived in Fargo until the horses were unloaded at Valley City; while if defendant had maintained the minimum rate of speed of 20 miles per hour, provided for in section 4398, Rev. Codes, the distance would have been covered in three hours.   The case was tried to a jury.   The court ruled at the close of the evidence that no actual damages had been sustained, and that no recovery could be had upon the first cause of

action. Defendant, moved for a directed verdict upon all of the issues, which was denied; the court holding that the statute fixing the penalty for delay in shipment was vaild, and, the number of hours delay being agreed upon at 34, the court directed a verdict in plaintiff's favor for $170. An exception was reserved to the court's refusal to direct a verdict for defendant and to his direction to find a verdict for the plaintiff. In due time the defendant moved for judgment notwithstanding the verdict or for a new trial upon a statement of the case. The motion was denied, and judgment entered upon the verdict. From the judgment so entered and from the order denying defendant's motion for judgment notwithstanding the verdict, or for a new trial, this appeal is taken.

The decision of this case depends wholly upon the construction of sections 4398, 4399, Rev. Codes. Section 4398 reads as follows: "It shall be the duty of every railroad, railroad corporation, railway company, express company, car company and of every common carrier other than by water, by whatever name it may be called or by whomsoever operated and which is wholly or in part engaged in the transportation of any kind of live stock by railroad within or to or from any point in this state, to transport any and all such live stock so by it being transported, with the utmost diligence, and to maintain within this state in all trains so transporting any such live stock an average minimum rate of speed of not less than twenty miles per hour from the time any such live stock is loaded upon or into its cars until such train reaches its destination, deducting only in the computation of such average minimum rate of speed such reasonable time as any such live stock may be necessarily delayed in unloading to feed, water and rest and in feeding, watering and resting and in reloading." Section 4399 provides for a penalty for the violation of said section 4398.

Appellant contends that said sections 4398 and 4399, are void for the following reasons: (1) They are repugnant to article 1, section 1, of the Constitution of North Dakota; are an unreasonable exercise of the police power. (2) Said statutes are repugnant to the fourteenth amendment to the Constitution of the United States. (3). Upon the facts established in this case the shipment in question was an interstate shipment, and said statutes as to such shipment are repugnant to the Constitution of the United States as a regulation of commerce of the United States.

Article 1, section 1, of the state Constitution, provides that accquiring, possessing, and protecting property is an inalienable right. The fourteenth amendment to the Constitution of the United States, as far as material here, is as follows: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Congress has the exclusive power to regulate commerce with foreign nations and among the several states and with the Indian tribes. Respondent contends that the sections of the statutes referred to can be and ought to be upheld on the broad ground that the control of states over the speed of railway trains carrying live stock within their borders is merely a reasonable exercise of their police power for the health, comfort, protection, or convenience of their citizens. The exact limit of lawful legislation upon this subject cannot in the nature of things be defined. It can only be illustrated from decided cases, by applying the principles therein enunciated, determining from these whether in the particular case, the rule be reasonable or otherwise. The line which separates the powers of the states from this exclusive power of Congress is not always distinctly marked. Judges not infrequently differ in their reasons for a decision in which they concur. The correct rule, however, seems to be that state legislation which seeks to impose a direct burden upon interstate commerce or interfere directly with its freedom does encroach upon this exclusive power of Congress.

A statute requiring all railroad companies operating lines within the state of Ohio to cause three each way of its regular trains carrying passengers, if so many are run daily, Sundays excepted, to stop at a station, city, or village containing over three thousand inhabitants for a time sufficient to receive and let off passengers, held a valid exercise of the police power of the state, even though it applies to interstate trains. Lake Shore & Mich. Southern Ry. Co. v. Ohio, 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702. In this case the opinion is written by Justice Harlan and covers 20 pages, containing a full review of the authorities. The case, however, was decided by a divided court; Justices Shiras, Brewer, White, and Peckham dissenting. A state statute imposing a penalty for lack of due diligence in delivering a telegram, if made in a

reasonable exercise of the police power of the state, is not an unconstitutional interference with interstate commerce as applied to interstate messages, in the absence of any legislation by Congress on the subject. Western Union Tel. Co. v. James, 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105. A state statute prohibiting the running of freight trains on the Sabbath was held not invalid as interfering with interstate commerce, though, in effect, it prohibits trains from passing through the state on that day from and to adjacent states, but held an ordinary police regulation designed to secure the well-being and to promote the general welfare of the people within the state. Hennington v. State of Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166.

Article 284, Rev. St. Tex., requiring a common carrier of live stock to feed and water it sufficiently pending carriage, otherwise to be liable to the owner in damages and a penalty, is a police regulation, and, as applied to an interstate shipment, where the default complained of occurred entirely in Texas, is no infringement of the power of Congress to regulate interstate commerce, nor in conflict with Rev. St. U. S. section 4386 et seq. (U. S. Comp. St. 1901, page 2995), forbidding an interstate railroad to confine stock in cars longer than 28 hours without unloading, for rest, water, and feeding, for 5 hours, under penalty recoverable by civil action. Gulf, C. & S. F. Ry. Co., v. Gray et al (Tex. Civ. App.) 24 S. W. 837. In this case the court says: "The shipment in this case had its initial point in this state at Santa Anna, and its terminus at West Point, Miss., and may be conceded to be an interstate shipment; but the matter complained of for which the penalty is asked all occurred within this state on defendant's road. In such case it is believed our statute should be enforced. To do so would not be an illegal interference with the act or the powers of Congress. Our statute intended to protect both animals and the owner, and its enforcement would be the legitimate exercise of the state's police power. So applied, it is not an attempt to regulate interstate commerce in such sense as to infringe upon the exclusive right of Congress. Const. U. S. art. 1, section 8. Our statute does not regulate interstate commerce, or have the effect of doing so in an interstate shipment any more than if it were to punish the company for theft of the shipment in transit in this state to another state. It is a police regulation, and, as such, is within the power of the state legislature."

The case of Crawford v. Southern Ry. Co., 56 S. C. 136, 34 S. E. 80,. relied upon by the respondent, is not in point. In that case the court held that the law providing that no railroad company in the carrying or transportation of animals shall overload its cars, when applied to shipments made from a point within to a point without the state, is not unconstitutional as violating the provision in the Constitution of the United States granting Congress power to regulate interstate commerce. The court further held that under a statute which provides that railroad companies shall load and unload stock in transit every 24 hours for rest, and that the shipper shall feed and water them while resting, and, in case of his default, the company shall do so, a company failing to perform said duties is not relieved from liability to the shipper for injury to stock in transit, by reason of the shipper's failure to keep a special contract, under which he should ride on the transporting train and look after such loading and unloading. In Railroad Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688, it was held that a statute of a state providing that no contract shall exempt any railroad corporation from the liability of a common carrier or carrier of passengers, which would have existed if no contract had been made, does not, as applied to a claim for injury happening within the state under a contract for interstate transportation, contravene the provision of the Constitution of the United States empowering Congress to regulate interstate commerce. The case was this: The plaintiff while traveling in the caboose of a freight train of defendant, upon which his cattle were being transported under a special contract, was injured by reason of defendant's negligence, and brought his action for damages. One of the defenses set up was that by a clause in the special contract under which plaintiff and his cattle were carried it was, among other things, agreed that, in consideration of a reduced rate of charges, "the company shall in no event be liable to the owner or person in charge of said stock for any injury to his person in any amount exceeding the sum of $500." The plaintiff obtained a verdict for $1,000, and the case was eventually carried to the Supreme Court of the United States, where the only question was whether the statute of Iowa in which state the injuries were received, was in conflict with the interstate commerce clause of the United States Constitution; it being conceded that the shipment of the cattle was an interstate shipment. We quote liberally from the opinion of

the court delivered by Mr. Justice Gray: "Railroad corporations, like all other corporations and persons doing business within the territorial jurisdiction of the state, are subject to its law. It is in the law of the state that provisions are to be found concerning the rights and duties of common carriers of persons or of goods, and the measures by which injuries resulting from their failure to perform their obligations may be prevented or redressed. Persons traveling on interstate trains are as much entitled, while within the state, to the protection of that state, as those who travel on domestic trains. A carrier exercising his calling within a particular state, although engaged in the business of interstate commerce, is answerable, according to the law of the state, for acts of nonfeasance committed within its limits. * * * It is equally within the power of the state to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries, which, after they have been inflicted, the state has the power to punish and redress. The rules prescribed for the construction of railroads and for their management and operation, designed to protect persons and property otherwise endangered by this use, are strictly within the scope of the local law. They are not in themselves regulations of interstate commerce, although they control in some degree the conduct and liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the state to regulate the rights and duties of all persons and corporations within its limits. States may lawfully regulate the sale of railway tickets when such regulation does not operate so as to effect or impair the cost of tickets or the rate of fare charged for interstate travel. States may also by reasonable laws control the speed of trains, the stops of trains, unless interfering materially with interstate commerce, the running of trains on Sunday, the licensing of engineers, or track connections and terminal facilities, or may limit the hours of labor of railroad employes. We think the law in question does not come within any of the principles hereinbefore stated, nor within the principles laid down in the cases hereinbefore cited, and is unconstitutional and void, being an unreasonable exercise of the police power of the state. Houston & Texas Central Ry. Co. v. Mayes, 201 U. S. 321, 26 Sup. Ct. 491, 50 L. Ed. 772;

Cleveland, etc., Ry. Co. v. Ill., 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868; Ill. Central Ry. Co. v. Ill., 163 U. S. 142, 16 Sup. Ct. 1096, 41 L. Ed. 107.

An analysis of all the prior important cases upon the constitutionality of such laws is found in the opinion of the court in Cleveland, etc., Ry. Co. v. Ill., supra. In this case the railroad company attacked the constitutionality of a law, which is as follows: "Every railroad corporation shall cause its passenger trains to stop upon its (their) arrival at each station advertised by such corporation as a place of receiving and discharging passengers upon and from such trains, a sufficient length of time to receive and let off such passengers with safety: Provided, all regular passenger trains shall stop a sufficient length of time at the railroad stations of county seats to receive and let off passengers with safety." In this case the railroad company operated the Knickerbocker Special, a train devoted to carrying interstate transportation between the city of St. Louis and the city of New York. The state admitted that the railroad company furnished a sufficient number of regular passenger trains, four each way a day, to accommodate all the local and through business along the line of its road, and 'that all of such trains stopped at the county seat, but sought to uphold the law on the ground that it was a proper police regulation. The court says: "It is evident that the power attempted to be exercised under this statute would operate as a serious restriction upon the speed of trains engaged in interstate traffic, and might, in some cases, render it impossible for trunk lines running through the state of Illinois to compete with other lines running through states in which no such restrictions were applied. If such passenger trains may be compelled to stop at county seats, it is difficult to see why the legislature may not compel them to stop at every station. * * * If each state was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each state could provide for its own passengers and regulate the transportation of its own freight regardless of the interests of others." The distinction between this statute and regulations requiring passenger trains to stop at railroad crossings and drawbridges, and to reduce the speed of trains when running through crowded thoroughfares, requiring its tracks to be fenced, and a bell and whistle to be at-

tached to each engine, signal lights to be carried at night, and tariff and time-tables to be posted at proper places, and other similar requirements contributing to the safety, comfort and convenience of their patrons—is too obvious to require discussion." The case of Houston & Texas Central Ry. Co. v. Mayes, supra, is nearer in point to the case at bar than any cited by appellant or respondent. This case involves the constitutionality of certain laws of Texas requiring any railroad company to furnish cars at any point of its road within a certain number of days after the written request of a shipper for such cars, and providing a penalty of $5 a car for each day after the limited time to be recovered by the shipper in civil action. The law was held unconstitutional by a divided court, Mr. Justice White taking no part, and the Chief Justice, Mr. Justice Harland and Mr. Justice McKenna dissenting. In this case the court says: "While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers, and to regulate the general subject of speed, length and frequency of stops, for the heating, lighting, and ventilation of passenger cars, the furnishing of food and water to cattle and other live stock we think an absolute requirement that a railroad shall furnish a certain number of cars at a specified, day, regardless of every other consideration, except strikes and other public calamities, transcends the police power of the state, and amounts to a burden upon interstate commerce. It makes no exception in cases of a sudden congestion of traffic, an actual inability to furnish cars by reason of their temporary and unavoidable detention in other states, or in other places within the same state. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads, involving a detention of traffic, the breaking of bridges, accidental fires, washouts, or other unavoidable consequences of heavy weather."

The statute in question makes no exception in cases of sudden congestion of traffic, and no allowance for interference of traffic occasioned by wrecks or other accidents, the breaking of bridges, accidental fires, washouts, snow storms, or other unavoidable consequences of heavy weather.

The judgment and order appealed from are reversed, and the district court will render a judgment dismissing the action. All concur; ELLSWORTH, J., concurring specially.

ELLSWORTH, J., (concurring specially). I concur in this opinion on the sole ground that sections 4398, 4399, Rev. Codes 1905, as enacted, are an unreasonable exercise of the police power of the state, and therefore repugnant to section 1 of the state Constitution and void.